# JEFF KIRK v. STATE

No. A-4917.   Opinion Filed Nov. 28, 1925.
(241 Pac. 205.)

Carlile & Wall, for plaintiff in error.

Geo. F. Short, Atty. Gen., and Fred Hansen, Asst. Atty. Gen., for the State.

EDWARDS, J. From a conviction of manslaughter in the first degree, in the district court of Sequoyah county, the plaintiff in error, hereinafter called defendant, has appealed.

Briefly stated, the record discloses a state of facts about as follows: On the night of the 9th of March, 1923, in the little town of Marble City, the defendant, with a revolver, shot and killed Mack Dodson. It is the theory of the state that the defendant provoked the difficulty on account of the friendship of the deceased toward a young woman with whom defendant was keeping company. The defendant contends that the difficulty was provoked by the deceased, and that the killing was in his necessary self-defense.

The assignments of error argued in the brief may be considered under two propositions: First, error of the court in permitting the use of witnesses whose names were not correctly indorsed on the information; second, insufficiency of the evidence. These contentions will be considered in the order named.

The first error claimed is that the court allowed Dr. Holcomb to be used in chief by the state as a witness. The name indorsed upon the information was "Dr. Holcomb, Marble City," without using the initials. Also that the court erred in permitting Lola May Carlton to be used by the state in chief. The name indorsed upon the information

was "Miss Carlton of Marble City." It is not suggested that the list of names required by the Constitution to be served upon the defendant at least two days before the trial did not contain the correct names, nor that the defendant was in any wise prejudiced by failure of the state to more definitely identify the witnesses. It affirmatively appears that the defendant was not prejudiced by the failure of the state to give the first name or the initials of the witnesses Dr. Holcomb and Miss Carlton. No objection was made before going to trial and none until the witnesses were called and sworn. This court, in the case of Galbert v. State, 12 Okla. Cr. 573, 160 P. 332, in passing upon a similar contention, said:

"The only other matter defendant complains of is that among the names of the witnesses served on him, under the constitutional requirement, the only cognomen ascribed to one witness was 'Rev. Walker,' and, further, that the post office address of the first witness was given at Maxwell, Okla., and instead of writing the words, 'Maxwell, Okl,.' after each successive name, that only ditto marks appeared under the words 'Maxwell,' and 'Oklahoma' opposite the names of all the other witnesses, and contends that this was a serious infringement upon his constitutional rights. But the purpose of the constitutional provision that 'in capital cases, at least two days before a case is called for trial, the defendant shall be furnished with a list of the witnesses that will be called in chief, to prove the allegations in the indictment or information, together with their post office addresses,' is to apprise the defendant who the witnesses are and where they may be found, and thus enable him to investigate their character, learn what their testimony will be, and take whatever steps he may desire to offset or rebut their evidence; and if the defendant in this case had not been able to locate the witness Walker by the cognomen given, or did not understand what these ditto marks meant, and had been misled by reason of their use, he should have made his troubles known to the court before announcing ready for trial. But he did not do this. He answered ready for trial, and waited until Rev. Walker was called upon the witness stand, and then objected to his testifying on the grounds above set out. But the objection came too late."

In the case of Walker v. State, 10 Okla. Cr. 533, 139 Pac. 711, it was held:

"We cannot give our consent to a construction of the constitutional provision that would necessitate a reversal of the judgment from the record in this case. It is sufficient to say that, where it affirmatively appears that the defendant has not been misled to his prejudice by the omission of the given name of a witness, whose surname and post office address appeared upon the list furnished to the defendant, he is not entitled to a reversal because the testimony of such witness has been received."

Upon this view of the case, if the names indorsed on the information so indefinitely described the witnesses that the defendant was not able to investigate their character or testimony and was misled, some suggestion should have been made to the court prior to announcing ready for trial, and when that was not done the objection, if it had any merit, is waived.

The second assignment is that the court should have sustained the defendant's demurrer at the close of the state's evidence and should have sustained his motion for a new trial on the ground of insufficient evidence. The state offered the evidence of several witnesses to show a motive for the killing of the deceased by the defendant. Lola May Carlton testified that, about two or three days before the homicide, she heard the defendant tell Velma Gossett that he was going to kill the next boy he caught going with her. Lillian Lee testified that she was present when that conversation was had, and heard the defendant say that he would kill the next boy he caught Velma Gossett with, and that Velma replied, "You need not care who I go with," and that the defendant said, "All right, you are my girl, and I will kill him the next time you do." She further testified that later she saw the deceased, Mack Dodson, in company with Velma Gossett. Mildred Lee and Helen Lee testified to substantially the same effect.

Mamie Crouch testified that shortly after the homicide she saw defendant go to his sister's house and put his pistol on her dresser, and that at the time he appeared angry.

Clifford Woodward testified that a few minutes before the homicide he saw defendant going down the street, and a few minutes afterward the deceased passed going in that direction, and in some ten or fifteen minutes he heard shots; that Mack Dodson was killed about a block from where he saw him pass. The deceased was shot in the left breast, and was dead when the physician reached him about fifteen minutes later. There was some evidence that for some three weeks after the killing the defendant was a fugitive. He later came in and surrendered.

The defendant contends that his demurrer to the evidence at the close of the state's case should have been sustained. With this contention, we do not agree. In so grave a matter as a charge of murder, if there is any evidence tending to connect a defendant with the commission of the crime charged, a demurrer or a motion to direct a verdict should not be sustained by the court, but the question of guilt or innocence should be submitted to the jury.

The circumstances proven were such that the court did not err in overruling the defendant's demurrer. The defendant then offered evidence of several witnesses to the homicide who testified concerning the homicide; their evidence tending to prove self-defense. Two of these witnesses, Boy Sloan and Brodie Diffee, admitted that at an inquest held over the body of the deceased they had sworn falsely in giving testimony that they were not present at the time of the homicide and knew nothing about it. The defendant testified in his own behalf that he and Boy Sloan and Brodie Diffee were together when the deceased came up and provoked the difficulty, struck the defendant and was choking him, when defendant called to them to take deceased off of him, but, as they did not seem to be moving, he

reached in his hip pocket, got his gun, and punched the deceased with it two or three times, called again to the boys to take him off, and told the deceased he was going to shoot him, and the deceased then struck him on the ear, and he shot him.

The evidence of the state is circumstantial. While the evidence of the defendant and the witnesses Sloan and Diffee is that of eyewitnesses, the credibility and weight and value of the evidence, and the inferences to be drawn from it, is for the jury, and, where the evidence is such that the jury may reasonably and logically find the defendant guilty, the verdict will not be disturbed.

The case is affirmed.

BESSEY, P. J., and DOYLE, J., concur.