### ALLEN CARROLL v. STATE.

No. A-8596.  Dec. 22, 1933.
(28 Pac. [2d] 588.)

Hays Dillard and Paul R. Dillard, for plaintiff in error.

J. Berry King, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for the State.

CHAPPELL, J.  Plaintiff in error, hereinafter called defendant, was convicted in the district court of Jefferson county of the offense of larceny of an automobile, and his punishment fixed by the jury at imprisonment in the state penitentiary for a term of six years.

The evidence of the state was that the 1931, Model A, Ford coupe of Dr. Watson was stolen from his garage in the town of Ryan, in Jefferson county, after 9:30 p. m., on January 31, 1933; that about 9:30 or 10 o'clock on the

next morning this automobile was found on a public street in the town of Memphis, Tex., about two hundred miles from the place where it was stolen; that this car was in possession of Bruce Jaggers; that defendant and Bruce Jaggers were seen together in the town of Ryan on the evening of the day the Watson automobile was stolen; that defendant was also found in Memphis, Tex., on February 1, 1933, where he was arrested and brought back to Ryan for trial; that the last person to see defendant on the night the Watson car was stolen was one Bailey Campbell, who testified he was with defendant at about 7 o'clock p. m., and that defendant left him with the statement that he was going to the high school to a basket ball game; that the school house was about a block and a half from Dr. Watson's garage; that some time prior to the time Dr. Watson's car was stolen, defendant and Jaggers were laughing and talking with Juanita Campbell, a sweetheart of Carroll's, in the town of Ryan, and said, "They were going to town, they had to get that car"; that a cap answering the description of the one worn by defendant was found in the car when Jaggers was arrested, together with a battery cord used to wire around the switch to enable the thieves to start the car.

Defendant did not testify nor offer any evidence in his behalf.

It is first contended the evidence is insufficient to support the verdict of the jury.

Certain particular circumstances standing out in the case are that defendant and Jaggers had made up their minds to get the car; that defendant was in the town of Ryan on the night the car was stolen and in the neighborhood of where it was stolen; that defendant and Jag-

gers were together in Ryan that afternoon, talking with each other; and that the very next day they were in Memphis, Tex., one of them in possession of the stolen car. Neither defendant nor Jaggers explain why they were in Memphis, two hundred miles away, or the why of their sudden departure from Ryan. To reach Memphis at the time they were arrested, it was necessary that they drive at night. The last message from defendant is that he was going to a basket ball game. He never told anybody he intended to go to Memphis, neither had his friend and associate, Jaggers, told anybody that he intended to make a hurried trip to Memphis that night in Dr. Watson's car. The only persons who could explain the sudden trip to Memphis and the possession of Dr. Watson's car were Jaggers and this defendant. They made no effort to do this.

There is a basis in this evidence on which the jury could reasonably and logically conclude that this defendant was guilty, and that is all this court has to look for. Whitten v. State, 25 Okla. Cr. 447, 221 Pac. 115; Kirk v. State, 32 Okla. Cr. 361, 241 Pac. 205; Halsey v. State, 42 Okla. Cr. 221, 275 Pac. 405.

It is next contended the testimony given by L. E. Hill, deputy sheriff of Hall county, Tex., was incompetent.

Counsel do not set out any particular portion of this testimony, but merely condemn all of it as based on hearsay and also including certain extrajudicial identifications of the defendant that were clearly incompetent.

Now in order to justify the arrest of defendant for a felony, and the detention of Jaggers as well, and of the Ford coupe, and to make admissible evidence of such arrest and of what was found in such automobile, it was

necessary for the state to lay a legal foundation for the arrest of defendant and the holding of the Ford coupe.

Section 2780, Okla. Stat. 1931, among other things, provides:

"A peace officer may, without a warrant, arrest a person: * * *

"Third. When a felony has in fact been committed, and he has reasonable cause for believing the person arrested to have committed it."

The evidence given by Hill forming the foundation for believing this defendant had committed a felony in this state and constituting reasonable cause for his arrest may be based on hearsay to a considerable extent, as of necessity it must be or there would be no way of apprehending and arresting an escaping felon.

This evidence was admissible to show Hill had reasonable ground to suspect this defendant had committed a felony and was in the act of escaping therefrom. The only description of defendant testified to by Hill was one given him as a foundation for defendant's arrest. This did not purport to be a description of defendant given by anybody identifying him with the taking of Dr. Watson's Ford coupe, but only information received from the sheriff of Waurika, Okla., that a felony had been committed and that two men of certain descriptions were suspected of having committed this felony and to arrest them if found.

The cases relied upon and cited by counsel for plaintiff in error in support of this assignment of error are not in point, because in each of these cases there was an extrajudicial identification of the accused testified to on hearsay, and in addition the arresting officer was permitted to

testify that he based his arrest on this extrajudicial identification.

A careful examination of the evidence of this witness discloses that there is no substantial merit in defendant's contention.

It is next contended the court erred in permitting the state, over the objection of counsel for defendant, to introduce a statement signed and sworn to by Juanita Campbell the day before she gave her testimony in court in behalf of the state, which signed statement was contradictory of the testimony of the witness as given at the trial.

The record discloses that this witness, who was a sweetheart of the defendant, had been questioned by the county attorney on the day before the trial commenced and had made a sworn statement to the effect that on the Saturday immediately preceding the taking of this car, defendant and Bruce Jaggers, his codefendant, were talking about stealing a car and that defendant said they would have to get back to town and get some business attended to if we get the car.

As a witness on the trial Juanita Campbell testified that defendant was laughing and talking one night, which was about two or three weeks earlier than the date given in her statement, and did not say anything about stealing a car, but said they had to go to town to get that car. The county attorney announced to the court that he was taken by surprise by the statement of the witness given at the trial and asked permission of the court to cross-examine her in respect to said statement, which the court permitted, and when the witness denied making any such statement, but claimed that the county attorney put that

into the statement and would not let her read it, the court permitted the county attorney to introduce the sworn statement in evidence and also to introduce the justice of the peace before whom the statement was sworn, who testified to the effect that the witness was looking over the shoulder of the county attorney when the statement was typewritten, and also that the county attorney read the statement to her and that she said it was correct and swore to it as correct.

This court has held in substance that when a party has been deceived in placing a witness upon the stand, believing that the witness will testify to facts favorable to such party, and the witness upon the stand testifies to facts injurious to said party and conflicting with previous statements made by such witness, it would be a perversion of justice to deny such party the right to introduce in evidence statements made by such witness conflicting with the testimony given. This may be done upon the ground of surprise to explain the action of the party in placing the witness upon the stand and to destroy the injurious effects of such testimony. Sturgis v. State, 2 Okla. Cr 364, 102 Pac. 57; Paris v. U. S., 5 Okla. Cr. 601, 115 Pac. 373; Foreman v. State, 38 Okla. Cr. 50, 259 Pac. 176; Donahue v. State, 38 Okla. Cr. 87, 259 Pac. 179.

Under the circumstances disclosed by this record and upon the statement of the county attorney that he was surprised at the testimony given by the witness at the trial, it was permissible and not an abuse of discretion upon the part of the trial court to permit the county attorney to impeach his own witness, and the introduction of the statement made by this witness before the justice of the peace was not prejudicially erroneous.

While this case is not free from error, the purpose of the law is to punish those guilty of the commission of crime, and where it is apparent that the errors complained of are not such as may have influenced the jury erroneously in arriving at a true verdict, the judgment should not be reversed.

No reversible error appearing upon the record, the cause is affirmed.

EDWARDS, P. J., and DAVENPORT, J., concur.