## KRAMER v. STATE.

No. A-11767. May 13, 1953.

(257 P. 2d 521.)

Miskovsky & Miskovsky, Oklahoma City, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Lewis A. Wallace, Asst. Atty. Gen., for defendant in error.

JONES, J. The defendant Max L. Kramer was charged by informations filed in four separate cases (No. 20370, No. 20371, No. 20372, No. 20373) in the district court of Oklahoma county, with the crime of embezzlement. In each of said informations, the accused was alleged to have embezzled a sum of money which he had received as a trustee of the proceeds of the sale of mortgaged property which was allegedly sold with the consent of the mortgagee, which prosecution was instituted under the provisions of Title 46 O.S. 1951 §§ 71 and 72. Counsel for the defendant agreed with the county attorney that the four cases could be consolidated for the purpose of trial and the cases as thus consolidated were tried together but only one verdict was rendered. In it the jury found the defendant guilty and left the punishment to be fixed by the court. Thereafter, the trial court sentenced the defendant to three years imprisonment in the State Penitentiary. Only one judgment and sentence was signed by the court, and the number given to the judgment was listed in this manner:

No. 20,370 ⎫
No. 20,371 ⎪
No. 20,372 ⎬ Consolidated
No. 20,373 ⎭

After the conviction was sustained by the defendant Kramer, counsel who represented him in the trial was discharged and he employed other counsel to prosecute the appeal.

In the brief filed on behalf of the defendant, there are several assignments of error presented, but a large number of them will not be considered by this court for the reason that they are not of a fundamental nature and no objection or exception was preserved thereto at the trial and the same were not presented in a motion for new trial. However, we have come to the conclusion that reversible error was committed in the trial and because of the commission of such error, the case will have to be reversed for a new trial, and for that reason we shall consider those assignments of error which appear to have substantial merit so that further error will not be committed upon another trial.

The first proposition to be considered is the question as to whether a defendant may be placed upon trial for two or more offenses at the same time. In the cases of Booth v. State, 73 Okla. Cr. 67, 117 P. 2d 805, and Mendenhall v. State, 82 Okla. Cr. 220, 168 P. 2d 138, we sustained the convictions where several cases against an accused had been consolidated for the purpose of trial by agreement of counsel, such as was done in the instant case. However, such practice is not approved, and we think that only in exceptional circumstances where the defendant requests it should the court permit it to be done. The manifest unfairness of such proceeding is apparent. However, counsel for an accused should not be permitted to trifle with a trial court by agreeing that cases could be joined for the purpose of trial and then later complain of the trial court's action in permitting it to be done. That was the basis for the conclusion we reached in the two cases hereinabove mentioned. However, the error of the court does not lie in acceding to the request of counsel for the defendant and the county attorney to consolidate the cases for trial, but the error was committed in treating the cases after they were joined for the trial as one case, and in submitting the case to the jury, only one set of forms of verdict was submitted and, as counsel for the accused has pointed out, it may have been that three of the jurors might have thought he was guilty in case No. 20,370, three others in No. 20,371, and the other jurors divided between the two remaining cases, and under the form of verdict submitted by the court, they would have all joined in the one verdict. Separate forms of verdicts for each case should have been submitted. Upon the retrial of these cases, we suggest that each case be separately tried. The trial court was lenient to the defendant and he should not have complained, since by the judgment which was rendered the defendant was only sentenced to serve a total of three years for the four cases, where he might possibly have been given a sentence of five years and a fine of $500 on each charge.

It is insisted that the evidence was insufficient to support the conviction. In support of this proposition, it is urged that the proof affirmatively showed that the sale of the mortgaged property was without the consent of the mortgagee and, therefore, the mortgagor was not a trustee of the proceeds of the sale as contemplated by the statute. 46 O.S. 1951 § 71. Second, the alleged sales were not made within the State of Oklahoma; and third, there was no proof of the corpus delicti, that is, that the diversion of the proceeds of the sale, or embezzlement, occurred in Oklahoma County.

By statute it is provided:

"Every mortgagor of personal property in this state, who with the consent of the mortgagee, or his assignee, shall sell such mortgaged property, or any part thereof, while the mortgage remains in force and unsatisfied, shall be deemed and conclusively held to be the trustee of the funds received upon the sale thereof, for the benefit of such mortgagee, or assignee, to the extent of the indebtedness secured thereby or any balance due thereof." 46 O.S. 1951 § 71.

Under this statute, it was essential for the proof of the state, in order for the mortgagor to become the trustee of funds received from the sale of mortgaged

personal property, to show that such mortgaged property was sold with the consent of the mortgagee.

The proof of the state showed that the defendant Max L. Kramer was an automobile dealer in Oklahoma City, engaged chiefly in the sale of used automobiles. The defendant began doing business with the Bob Harper Finance Company of Oklahoma City in September, 1948. Bob Harper testified that the finance company made various loans to the defendant in his automobile business under what is generally known in the business as the "floor plan" arrangement. As explained in his testimony, the defendant would buy the automobiles and the company would advance him the money on the basis of the dealer's costs and would take as security for the loan a note and chattel mortgage. The mortgagor would then be permitted to sell the cars in the course of his business and as the money was received, he was required to deliver it to the company in payment of the note and mortgage.

Notes and chattel mortgages were identified and introduced in evidence covering the four separate automobiles involved in the respective informations which were filed against the defendant. The proof showed that these mortgages were in force and effect on April 20, 1951, and have never been paid. An agent of the finance company made periodic checks of the car lot of the accused for the purpose of determining which automobiles had been sold and which were still in the possession of the accused. The four automobiles in question were not on the used car lot on April 20, 1951, but they had been on the Kramer lot about three weeks before that time. Mr. Harper and his attorney talked to the defendant and learned that he had sold the automobiles in Dallas, Texas, and had brought the money back to Oklahoma county but had not applied it on his notes and mortgages to the finance company. Defendant had received approximately $6,000 for these four automobiles. Mr. Harper testified that under the floor plan the defendant had general authority to sell the cars and apply the proceeds to his loan. However, on further examination, he testified that the defendant did not have his consent to take the specific cars to Dallas, Texas, or any other place outside of the State of Oklahoma and sell them. We do not know whether the prosecuting witness meant that he just didn't give specific authority to sell the particular cars or whether the general authority which defendant had under the floor plan would not have permitted an out-of-state sale. Upon the retrial this should be clarified.

The defendant testified in his own behalf and admitted taking the four mortgaged cars to Dallas, Texas, where he sold them and received approximately $6,000 for them. That he brought the money back to Oklahoma City and used it to pay debts of the Kramer Motor Company, but did not pay any to the Harper Finance Company because they had had a receiver appointed for his properties. The defendant further testified that under the floor plan arrangement which he had with the finance company, he had been permitted to sell automobiles anywhere that he could find a market for them. That he had sold cars in various other states as well as Oklahoma and had always applied the proceeds to his loans with the finance company until he became in stringent financial difficulties a few months before the filing of charges against him resulting from the sale of the four automobiles in Texas.

In considering the three grounds which it is alleged show the evidence was insufficient to sustain the conviction, it is unnecessary to comment extensively upon two of the grounds.

The statute under which this prosecution was instituted provides:

"If such mortgagor, being a person, or its officers or agents making such sale if a firm or corporation, shall, without the consent of the mortgagee or

assignee, appropriate such funds to his own, or the use and benefit of such firm or corporation, or shall knowingly or wilfully, with the intent or effect of depriving such mortgagee or assignee thereof, secrete such proceeds, or any part thereof, or mix and mingle the same with his own or with the funds of such firm or corporation, or who after demand for the payment thereof, refuses or neglects to pay same over to such mortgagee or assignee to the extent of the unpaid secured debt, or cause same to be done, or who shall put such fund to any other use inconsistent with such trust, shall be guilty of embezzlement and shall, upon conviction, be punished by a fine of not less than One Hundred ($100.00) Dollars, nor more than Five Hundred ($500.00) Dollars, or by imprisonment in the state penitentiary for a term of not more than five years, or by both such fine and imprisonment." 46 O.S. 1951 § 72.

As we view the above statute, it was immaterial where the sale of the mortgaged property occurred. The charge was embezzlement and the venue of the prosecution would lie in the county and state where the embezzlement occurred. After the sale of the property was made in Texas, the mortgagor, under the statute, 46 O.S. 1951 § 71, supra, became the trustee of the funds which he received for the benefit of the mortgagee. When he brought the money to Oklahoma City and used it for a purpose inconsistent with his trust and to pay other debts of the Kramer Motor Company or for other purposes, the offense, if any, was committed in Oklahoma county.

There is considerable merit to the contention that the sale of the automobiles was without the consent of the mortgagee. Mr. Harper first testified that under the floor plan arrangement the defendant had general authority to sell the automobiles wherever he deemed it advantageous and account for the proceeds to the finance company. The defendant testified to this same effect and stated that he had sold many cars in other states than Oklahoma with the knowledge of the finance company. The weakness of the state's case arises from the testimony of Mr. Harper that defendant did not have his consent to sell the automobiles in question outside of the State of Oklahoma. Upon a retrial of this case, the court should clearly instruct the jury that if the sale of the automobiles was made without the consent of the mortgagee, the defendant would not be guilty of embezzlement under the statute under which this prosecution was instituted. The remedy of the state upon such a state of facts would be a prosecution under some other section of the statutes than the one under which the prosecution was instituted.

It is contended that the trial court erred in admitting in evidence certain alleged statements of the defendant which amounted to a confession of his guilt. We think the testimony relating to the alleged admissions by the defendant was properly admitted as they were voluntarily made. In fact, the defendant testified to substantially the same facts as were related in the alleged confession. The basis for the complaint by the accused on appeal is that although the court properly excluded the jury from the courtroom at the time the objection to the admission of the alleged confession was interposed and heard the evidence in relation thereto in the absence of the jury that the court did not, after he had overruled the objection, permit such evidence to again be given to the jury for the purpose of enabling them to judge what weight and value should be given to the confession as evidence. Counsel are correct in their statement of the law. In Prather v. State, 76 Okla. Cr. 385, 137 P. 2d 249, this court laid down the following rules of law:

"Extrajudicial confessions are those which are made by the defendant out of court, whether to an official or nonofficial person, and such confessions, in order to be admissible, must be entirely free and voluntary.

"Where the competency of a confession is challenged on the ground that, if made, it was not voluntary, its admissibility is primarily a question for the

court. In the absence of the jury, the court should hear the evidence offered respecting the facts and circumstances attending such alleged confession, and the burden is on the defendant to show that it was procured by such means or under such circumstances as to render it inadmissible, unless the evidence on the part of the state tends to show that fact. If it is held competent, and the proof of the same admissible, the defendant is entitled to have the evidence in regard to the facts and circumstances under which it was made given anew to the jury, not that the jury may pass upon its competency or admissibility, but for the purpose of enabling them to judge what weight and value should be given to it as evidence, and the jury may disregard it if they are not satisfied that it was voluntarily made."

The procedure outlined above should be followed when questions are raised concerning the admissibility of an alleged confession. However, no reversible error was committed in this instance on account of the testimony of the defendant. On a retrial, we suggest the court follow the procedure outlined in Prather v. State, supra.

The judgment of the district court of Oklahoma county is reversed and the case is remanded for a new trial.

POWELL, P. J., and BRETT, J., concur.