# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

PEARL TRENT V. COMMONWEALTH OF VIRGINIA.

April 26, 1943.

Record No. 2684.

Present, All the Justices.

The opinion states the case.

*Francis T. Wheeler* and *A. W. E. Bassette, Jr.*, for the plaintiff in error.

*Abram P. Staples, Attorney General, Walter E. Rogers, Assistant Attorney General*, and *Carrington Thompson, Special Assistant*, for the Commonwealth.

HOLT, J., delivered the opinion of the court.

The defendant has been convicted of keeping a house of ill fame. Our statute, which governs this subject, reads:
"Keeping house of ill-fame; how punished; general character of house may be proved.—If any person keep a house of ill-fame, resorted to for the purpose of prostitution or lewdness, he shall be confined in jail not exceeding one year and fined not exceeding two hundred dollars; and, in a prosecution for this offense, the general character of such house may be proved." Code, section 4548.

The defendant kept a boarding house and was under contract with the Newcomb Fish Company to give breakfast

and supper to between thirty-five and forty men, and this she did. Violation of the liquor law of this State was suspected, and about one a. m. on May 2, 1942, an officer of the Alcoholic Beverage Control Board, accompanied by an officer of the Military Police, raided her premises, 40 Fulton Street, near Phoebus, in Elizabeth City county.

Certain evidence tending to show violation of our liquor laws was found, but since that is not the offense here charged, we pass it over.

The house itself is a small, five-room cottage with two bedrooms. In it the defendant lived, and in it also were two negro girls who served as waitresses. When this raid was made, only one room was found locked. When its door was opened, Pearl Trent, practically undressed, was found in bed with Bernard Ross. She, herself, had been convicted on June 1, 1940, of keeping a house of ill fame. About two weeks before the raid which was here made, a soldier at Fortress Monroe contracted a venereal disease at this place from a woman not named. On March 3, 1942, another soldier was carried by a taxicab driver to it where he had sexual intercourse with an unidentified woman, for which he paid three dollars. It is also in evidence that this house had the general reputation of being one of ill fame, which evidence, as we have seen, is made competent by statute.

There are enacted statutes governing this subject in probably every State of the Union. Their language is seldom the same, but they have one common purpose: The suppression of commercial prostitution. That traffic flourishes in the houses of ill fame. They are often disorderly; they are public nuisances; they are wholly immoral and serve as centers of infection for disastrous social diseases. The purpose of these statutes is too plain to be misunderstood, and since this purpose is plain, we give effect to it where possible.

At the trial this instruction was tendered on behalf of the defendant and refused:

o

"The court instructs the jury that a house of ill fame is a place resorted to by members of both sexes for the purpose of prostitution and lewdness.

"The jury is further instructed that even though you may believe from the evidence that Pearl Trent offered herself for the purposes of prostitution to various men, you shall nevertheless find the defendant not guilty, unless you further believe from the evidence that other women resorted to such house for the purpose of prostitution or lewdness."

The heart of this instruction is that one lewd woman does not make the house in which she lives a house of ill fame. We shall see that it may or may not.

The defendant contends that to keep a house of ill fame is a common law offense and is now in Virginia a statutory offense and that since the statute does not define this offense resort for its definition must be had to the common law. This was the holding of the Supreme Court of West Virginia. *State* v. *Pyles*, 86 W. Va. 636, 104 S. E. 100, 12 A. L. R. 527. In it *Houston* v. *Commonwealth*, 87 Va. 257, 12 S. E. 385, is cited in support of the proposition that for undefined offenses resort must be had to the common law.

In this West Virginia case Judge Poffenbarger said:

"Under the common law, a house kept by one woman, who there indulges in prostitution with numerous men, and not resorted to by other lewd women for such purposes, is not a house of ill fame * * * " citing authorities.

*State* v. *Pyles, supra*; the conclusion of the West Virginia court is sustained by an annotation, citing English cases.

Our textwriters do not wholly accept the definition adopted by the West Virginia court, which holds, as we have seen, that there must be more than one woman living in the house.

■ ■ "Proof of the use of a single room for purposes of general prostitution will support an indictment for keeping a 'house' for such purposes. And a canvas tent may be a 'house' in the same sense; and so may a boat on a river when used as a habitation." Wharton's Criminal Law, sec. 1458.

Bishop's New Criminal Law, sec. 1084, has this definition:

"House—may consist of no more than a single room in a dwelling-house. Or it may be a tent, or a boat on a river. Not even need the place be used for habitation."

In 18 C. J. 1241, the law in this country is thus stated:

"(b) Number of Women Inhabiting or Frequenting. While there are authorities holding that a bawdyhouse must be a place of resort for or a habitation of more than one woman, yet it is more generally held that it is not necessary that more than one woman inhabit or resort to the place for the purpose of prostitution. The house is not necessarily a bawdyhouse even though more than one woman inhabits it and uses it for illicit sexual intercourse."

In *State* v. *Gardner*, 174 Iowa 748, 156 N. W. 747, the court declined to give an instruction which defined a house of ill fame as a place of resort inhabited by more than one woman actually engaged in prostitution. See also *State* v. *Clough*, 181 Iowa 783, 165 N. W. 59.

In *People* v. *Marron*, 140 Cal. App. 432, 35 P. (2d) 610, the same conclusion is there reached. In the Pacific Reporter the substance of that decision is said to be:

"A 'house of prostitution,' which is synonymous with a 'house of ill fame,' may be a flatboat with a cabin on it, a tent, one room of a steamship, or a single room, and 'prostitution' means common, indiscriminate, illicit intercourse for hire, or the practice by a female in offering her body to an indiscriminate intercourse with men for money or its equivalent."

A house of ill fame is not measured by the number of its rooms or by the number of its inhabitants.

Under present conditions we should not narrow its definition. Some men in service sometimes are tempted to ignore social conventions which under ordinary conditions are more generally observed. Against the offence here charged our governments, both State and Federal, bring to bear the full measure of their power. It is not our purpose to hamper them.

This, however, is a proper qualification of conditions under which a conviction may be had:

" * * * It cannot be said that every house where illicit sexual intercourse is indulged in between a man and woman is necessarily a house of prostitution. To the contrary, in order to constitute a house one of prostitution, it must have the elements of a public house; a house where many people may frequent for immoral purposes, or a house where one may go for immoral purposes without an invitation. * * * " *Wilson* v. *State*, 17 Ala. App. 307, 84 So. 783.

Without undertaking to restate the evidence, we think it sufficient to sustain the jury's verdict, confirmed as it is by the trial judge.

*Affirmed.*