# HICKS v. STATE.

No. A-11309.  Feb. 7, 1951.

(227 P. 2d 685.)

312

Moore & Simon, Oklahoma City, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Lewis A. Wallace, Asst. Atty. Gen., for defendant in error.

BRETT, P. J. The plaintiff in error Everett Turner Hicks, defendant below, was charged in the district court of Oklahoma county, Oklahoma, by information with the crime of pandering. He was tried by a jury, convicted and his punishment fixed at 10 years in the Oklahoma State Penitentiary and to pay a fine of $300, and judgment and sentence was entered accordingly.

The crime was alleged to have been committed by the defendant in Oklahoma City at the Alamo Plaza Courts, 44th and South Shields, by agreeing with Florence McCauley that she would make plenty of money by entering and remaining in said courts and there having sexual intercourse with men for money, it being further agreed and understood that the McCauley girl would pay Everett Turner Hicks each and every time she had such

intercourse; that by reason of said persuasion, inducement and encouragement she did enter said courts, and thereafter committed acts of prostitution with an unknown number of male persons contrary to the provisions of Title 21, § 1081, O.S.A. 1941.

It appears from the record that following the arrest of Everett Turner Hicks he gave a written question and answer statement or confession to W. J. Landes and Roy C. Patterson, Juvenile Officers, before Mrs. Leona Hurt, police clerk or stenographer, in relation to his pandering for Florence McCauley as charged in the information. It further appears that the defendant signed the said statement and initialed each page thereof. At the trial this statement was offered in evidence. The admissibility of said statement in evidence presented primarily a question of law for the trial court to be determined outside the hearing of the jury. Williams v. State, 89 Okla. Cr. 95, 205 P. 2d 524; Lyons v. State, 77 Okla. Cr. 197, 138 P. 2d 142, 140 P. 2d 248, Id., 322 U.S. 596, 64 S. Ct. 1208, 88 L. Ed. 1481; Fields v. State, 77 Okla. Cr. 1, 138 P. 2d 124; Foster v. State, 79 Okla. Cr. 183, 152 P. 2d 929; Fry v. State, 78 Okla. Cr. 299, 147 P. 2d 803; Prather v. State, 76 Okla. Cr. 385, 137 P. 2d 249; Howington v. State, 35 Okla. Cr. 352, 250 P. 941; Rowan v. State, 57 Okla. Cr. 345, 49 P. 2d 791, 798, wherein this court said:

"In the case under consideration the court had the witnesses before him, could observe their general conduct and appearance, and their manner of testifying, and the interest of the witnesses was a proper subject for consideration and the burden was on the defendant."

Moreover, herein the trial court had the right to consider the trustworthiness of the defendant, a former convict, as against the reliability of the officers and Mrs. Hurt. Mayes v. State, 19 Okla. Cr. 102, 197 P. 1064.

Herein the trial court excluded the jury, heard the evidence as to the manner of procuring the said statement and concluded it was freely and voluntarily made, admitted the same in evidence over the defendant's objection and exception. Thereafter as the foregoing cases hold should be done, all of the evidence as to the manner of procuring the said statement was reproduced for the jury. In light of the foregoing authorities the evidence is not submitted anew to the jury that it might pass on its competency or admissibility, but for the purpose of enabling them to determine the weight and value to be given it as evidence, or if they find the confession was not voluntarily made, that they might disregard it entirely. The defendant's objection to the admission of the statement or confession in the case at bar, was predicated upon the contention said statement was not voluntarily given, but was obtained by a promise of leniency. The defendant testified that at the time of arrest he was then out on parole from the penitentiary on a sentence of 3 years had on a conviction for second degree burglary, and that he would make a signed statement if he would only be prosecuted in the municipal court. To the contrary Officer Landes who took the statement denied he made any such agreement with the defendant, and testified that he told Hicks he would not be filed on for a former conviction or as a second or subsequent offender. On the defendant's statement the trial court instructed the jury as follows, to wit:

"No. 8. You are instructed that in this case, the State has offered testimony tending to show that the defendant made a certain statement after his arrest and while he was in custody charged with the offense on which he is being tried, and which statement is relied on in part to establish the defendant's guilt of the offense charged against him; and the Court instructs you

if you find and believe from the evidence that such statement was made by the defendant, that a confession by one charged with an offense should be carefully scrutinized and received with great caution, and when deliberately and voluntarily made may be considered as evidence for or against the person making it the same as any other evidence, but if same was made under promise of immunity or a lesser punishment than might otherwise be inflicted, or was induced by threats, or was otherwise involuntary, then the same should be wholly disregarded by the jury.

"9. If you find from the evidence that the defendant made any confession or statement and that the same was made by the defendant in answer to questions propounded to him while under arrest or in custody, the fact of his being under arrest or in custody will not be sufficient to exclude such confession or statement as evidence or prevent you from considering the same, but the fact of being under arrest or in custody shall be considered with the other facts and circumstances in evidence in determining whether or not the confession or statement was made freely and voluntarily, and if you do find that it was made freely and voluntarily, it may be considered, otherwise, it should be disregarded."

Under these instructions in light of the foregoing authority the court properly instructed the jury as to the conditions under which they should consider the statement or confession. Herein, it was made clear to the jury that, if the jury believed the confession was made under a promise or hope of a lesser punishment than might otherwise be inflicted then the same should be completely disregarded by the jury. Moreover the jury was instructed that the fact the defendant had been arrested and was in custody would not exclude the confession from consideration but should be considered in relation to whether the confession was freely and voluntarily given. They were informed that if they concluded that

it was not so given, the confession was to be disregarded. As was said in Rowan v. State, supra, a verdict rendered under such conditions and instructions is conclusive on the issue. Thus the jury determines the ultimate facts under such conditions as are herewith presented. In the case at bar, whether the jury relied on or rejected the confession is not controlling for the evidence is ample to support the charge of pandering exclusive of the defendant's confession. The record discloses the defendant was a married man 25 years of age, the father of 4 children, 7, 5, 2 and 1 years of age, respectively. The record conclusively shows, exclusive of the confession admitting the facts as alleged, that the defendant was not only pandering for Florence McCauley, a girl 17 years of age, but that he was pandering for Sue Nell Wade, 12 years of age, and for Shirley Darlene Stevens, a girl 14 years of age. The Stevens girl testified that both she and Florence McCauley filled prostitution dates for the defendant at the Plaza Courts for which he was paid, and none of which the girls were permitted to keep. The testimony of Edward Wayne, porter at the Plaza Courts, is corroborative as to both the McCauley girl and the Stevens girl filling dates at the Alamo Plaza. The Stevens girl testified that she filled prostitution dates for the defendant before the McCauley girl was installed at the Alamo Courts by the defendant. The testimony of these witnesses was confirmed in the signed statement sought to be repudiated by Florence McCauley and which was offered in evidence on the ground of surprise to impeach her. We can therefore only conclude that her credibility was completely destroyed. Hence, under the court's instructions and the facts herewith presented, the admission of the de-

fendant's statement or confession does not constitute reversible error.

The defendant next complains that the state was permitted to impeach Florence McCauley by means of the written question and answer statement she had given the officers on January 14, 1949, following the arrest of the defendant. The defendant contends that it was error to permit the use of this statement in evidence for this purpose, in the absence of the trial court giving an instruction, to the effect that it could be considered only by the jury, for the purpose of impeaching the witness. The McCauley girl's statement was an admission of her part and the defendant's participation in the crime as laid in the information herein. When called as a witness in chief for the state she repudiated her written statement and testified contrary thereto except that she and the Stevens girl were at the Alamo Plaza. This occurring, the state pleaded surprise and asked leave to impeach the McCauley girl. Thereafter, through Officers Landes and Patterson and Mrs. Hurt, clerk and stenographer of the Police Department, it was established through their evidence that the statement was of a free and voluntary character, that the McCauley girl read the statement, signed and initialed each page thereof. The county attorney then proceeded to impeach her sworn denial by means of the contents of the statement. It was established that therein she had admitted she filled 2 dates in prostitution at the Plaza Courts for the defendant as alleged in the information. It was highly proper to thus impeach the witness on the ground of surprise. John v. State, 79 Okla. Cr. 50, 151 P. 808; Seabolt v. State, 59 Okla. Cr. 1, 57 P. 2d 278; Carroll v. State, 55 Okla. Cr. 197, 202, 28 P. 2d 588; Foreman v. State, 38 Okla. Cr. 50, 259 P. 176. In this connection

the defendant contends that the impeachment of the Mc-Cauley girl in such manner in the absence of an instruction by the trial court limiting the cross-examination to impeachment only constituted reversible error. It is admitted by the defendant that no request for such an instruction was made of the trial court. Ordinarily, in the absence of a request for an instruction, the failure to give the same will not constitute grounds for reversal on appeal. Dunbar v. State, 75 Okla. Cr. 275, 287, 131 P. 2d 116, 122, in the body of the opinion:

"It appears no request for instructions was made on the part of the defense, and that no such error is set forth in the motion for new trial. The record shows that this question is attempted to be raised for the first time in this court, and for this reason counsel for appellant has not properly raised the question. (Such is the situation in the case at bar.)

"Only prejudicial errors raised by exceptions reserved require a new trial, and it is only where we are satisified that the verdict is contrary to law, or to the evidence, or that injustice has been done, that we are permitted to reverse a conviction whether or not an exception has been taken in the trial court.

"The Code of Criminal Procedure provides the method of procedure for requesting instructions, and a defendant may submit to the court written instructions with the request that they be given, and how objections and exceptions shall be preserved. 22 O.S. 1941, §§ 831, 856.

"It has been repeatedly held by this court that it is the duty of counsel for defendant, where he is of the opinion that additional instructions should be given, to reduce them to writing, and request that they be given. If he fails to do so a conviction will not be reversed, unless the court is of the opinion, in the light of the entire record and instructions of the court, that there was a failure to instruct upon some material question of law, and that the defendant has been deprived of a substantial right.

Green v. State, 70 Okla. Cr. 228, 105 P. 2d 795; Lee v. State, 67 Okla. Cr. 283, 94 P. 2d 5; Adams v. State, 62 Okla. Cr. 167, 70 P. 2d 821; Pulliam v. State, 61 Okla. Cr. 18, 65 P. 2d 426; Russell v. State, 17 Okla. Cr. 164, 194 P. 242; Williams v. State, 12 Okla. Cr. 39, 151 P. 900."

This court has held that failure to so limit a signed confession or statement to impeachment purposes in a proper instruction is not necessarily reversible error. Foreman v. State, supra, in the body of the opinion as follows:

"Where a witness has made a statement which induces the party calling him to believe that he will testify to a certain state of facts, but when called testifies to a different state of facts injurious to the party calling him and conflicting with his previous statements, such party has the right to impeach the witness upon such contradictory statements, and may introduce in evidence statements made by the witness conflicting with his testimony so given, not as substantive evidence as proving the truth of the statement, but as affecting the credibility of the witness. Culpepper v. State, 4 Okla. Cr. 103, 111 P. 679, 31 L.R.A., N.S., 1166, 140 Am. St. Rep. 668. It would be a perversion of justice to say that one deceived or entrapped by a witness in this manner may not explain his acts in calling the witness and counteract the injurious effect of his testimony. Sturgis v. State, 2 Okla. Cr. 362, 102 P. 57; Paris v. United States, 5 Okla. Cr. 601, 115 P. 373.

"The impeaching of a witness in such case rests largely in the sound discretion of the trial court. When a contradictory statement is admitted, the trial court should limit and restrict the application of such testimony to impeachment only, but the failure to do this is not necessarily reversible error. Jones v. United States, 14 Okla. 356, 78 P. 100. The same situation exists except in a less degree, to the testimony of the witness George Copeland." [38 Okla. Cr. 50, 259 P. 177.]

In Jones v. U. S., it was held:

"Where evidence is introduced by way of impeachment, and when such evidence is competent for that purpose, and where there is other evidence in the case which reasonably tends to support the verdict, and where there is nothing in the record which tends to show that the jury regarded or considered such evidence in any other way than as impeaching testimony, this court will not reverse the case for the reason alone that the trial court did not instruct the jury to only consider such evidence as impeaching testimony, and where no such instruction [having been requested by] the party against whom such testimony was offered."

Under the conditions herewith presented the defendant made no objection to the court's instruction, and requested none, and the question is raised before this court for the first time. From the record there is nothing to indicate that the jury considered this evidence other than for impeaching purposes. While it was error for the trial court to fail to limit the McCauley girl's statement to impeachment, under the conditions herein, no instruction being requested as a limitation upon this evidence, and in light of the clear record of guilt, we are of the opinion that the same does not constitute ground for reversible error. In fact we are holding that, under the conditions herewith presented the trial court should have expressly limited the McCauley girl's statement to her impeachment only, but the trial court failing so to do, the defendant should have requested an instruction in this regard. The duty under the conditions herewith presented is dual. It rests primarily on the trial court, but secondly its weights falls on the defendant.

Further the defendant contends that the proof is lacking of the Plaza Courts being a house of prostitution. The defendant concedes that the evidence of Of-

ficers J. R. Landes and Roy C. Patterson reflects the general reputation of said courts as that of being a house of prostitution. But, as was said in Putman v. State, 9 Okla. Cr. 535, 132 P. 916, 46 L.R.A., N.S., 593, and Patterson v. State, 9 Okla. Cr. 564, 132 P. 693, the establishment of general reputation is not sufficient to support a verdict. In Bates v. State, 43 Okla. Cr. 195, 277 P. 676, in syllabus 1 it was said:

"In a prosecution for keeping a house of ill fame, it is competent to introduce evidence of the general reputation of the house in the neighborhood in which it is situated as to its being a place where lewd and lascivious persons of both sexes congregate for the purpose of unlawful cohabitation or sexual intercourse, but such evidence alone will not support a verdict; it must be corroborated by some other fact or circumstances tending to prove the character of the house."

It is well to observe in this connection, however, that this is not a case wherein it is sought to hold the owners and operators of the Plaza Courts for maintaining a house of ill fame or of prostitution. However, we are of the opinion that there is merit in the defendant's contention that proof that the Plaza Courts was a house of prostitution is an element of the offense and that the same cannot be established by proof of general reputation. Title 21, § 1081, O.S.A. 1941, defines pandering as where:

"Any person who shall procure a female inmate for a house of prostitution, * * * by any device or scheme shall cause, induce, persuade or encourage a female person to become an inmate of a house of prostitution;" etc.

In the Bates case there was no evidence to establish the house in question was a bawdy house. However, in the case at bar, the evidence is ample to corroborate the evidence of Officers Landes and Patterson that the

Plaza Courts had become and was at the time of the prostitution of Florence McCauley a house of prostitution. This record discloses so much of its facilities as was used had become such, under the facts herein, by the connivance of the defendant, the porter, the customer and the Stevens girl, before the acts allegedly committed by the defendant in co-operation with the McCauley girl. As the defendant admits in his brief, a house of prostitution may be a flatboat with a cabin on it, a tent, one room of a steamship or a single room. Prostitution means common, indiscriminate, illicit intercourse for hire, or the practice by a female in offering her body to an indiscriminate intercourse with men for money or its equivalent. Trent v. Commonwealth, 181 Va. 338, 25 S. E. 2d 350. So, also, we conclude it may be one or more of numerous courts or rooms in an inn or hostelry. Hence, in this instance, the Plaza Courts used by the defendant, his girls and their customers for the purpose of commercialized unlawful sexual intercourse became a house of prostitution. Such finding constitutes no reflection upon the Plaza Courts as an inn or hostelry for the court will take judicial notice that most of such establishments where porters and bellhops are employed may be so classified. It is common knowledge among hotel operators that they are invariably at the mercy of such employees and such employers may unwittingly and unintentionally provide the facilities for the prostitute and the panderer working through the porter to ply their unlawful practices. Nevertheless, their facilities become a house of prostitution. To hold otherwise would be to blind ourselves to the facts of life and to make of this court a shield for commercialized vice. This we will never knowingly do.

Finally, the defendant contends that the sentence in the case at bar is too severe and he implores the court to modify the same. In this regard we are confronted with a situation where the evidence of the defendant's guilt is clear. Moreover, the jury fixed his punishment at less than half the maximum. Title 21, § 1081, O.S.A. 1941, fixes the maximum punishment for pandering at not to exceed 20 years in the penitentiary and a fine of $1,000 and the minimum at not less than 2 years and a fine of not less than $300. But notwithstanding the jury did not impose the maximum penalty herein, and the record does not indicate that the jury did not consider the McCauley girl's statement as substantive evidence, we are aware of the fact that it may have been so considered. Hence, the error of the trial court in failing to limit the McCauley girl's statement to her impeachment only might have resulted in increased punishment to the defendant. Still, we are convinced it did not affect the verdict of guilty. It is our opinion that if the cause was tried a dozen times the jury could reach no other verdict than the defendant was guilty of pandering. Under these conditions, to reverse the case on the technical grounds urged by the defendant, and grant a new trial, could only result in undue hardship on the defendant. Herein he was unable to make an appeal bond and has now been confined in the penitentiary since May 2, 1949. A reversal, and new trial herein, would cause him to lose all of the time he has already served. Therefore, in light of the clear evidence of the defendant's guilt and the record as a whole, we are of the opinion that the judgment and sentence herein imposed should be, and hereby is modified, from 10 years in the penitentiary and a fine of $300, to 5 years in the penitentiary and a

fine of $300, otherwise the judgment and sentence is affirmed.

JONES and POWELL, JJ., concur.