Clarence BARRY, Jr., Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–13085.

Court of Criminal Appeals of Oklahoma.

Feb. 28, 1962.

Joe Francis, Philip K. Blough, Tulsa, for plaintiff in error.

Mac. Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

BRETT, Judge.

This is an appeal by Clarence Barry, Jr., plaintiff in error, defendant below. He was charged by information in the district court of Tulsa County, Oklahoma with the crime of having feloniously taken the life of Diana Arlene Slater on February 4, 1961, while engaged in the commission of a misdemeanor, in that he drove his automobile in a reckless and wanton manner at a speed in excess of 50 miles an hour, through a stop sign into the automobile in which the said Diana Arlene Slater was riding, thereby inflicting upon her mortal wounds.

Defendant was tried before a jury, convicted of first degree manslaughter (21 O.S. 1961 §§ 711–715) and his punishment fixed at four years in the state penitentiary. Judgment and sentence was entered accordingly, from which this appeal has been perfected.

Briefly, this tragedy occurred at the intersection of Knoxville Street, running north and south, and Fifteenth Street, running east and west, in the city of Tulsa. Fifteenth Street, it seems, is a through street, and Knoxville is a stop-sign street.

The decedent, Miss Slater, was a passenger in a Pontiac car driven by Robert Angel, proceeding in a westerly direction on Fifteenth Street, a four-lane thoroughfare with a sixteen-foot median. The defendant, driving a Chevrolet car, was proceeding in a northerly direction, on Knoxville. The record discloses that there was nothing to obstruct the view of north-bound traffic of the intersection of Knoxville and Fifteenth Street, and nothing to obstruct the view of the reflectorized stop sign at the southeast corner of the intersection. These facts were amply supported by photographic exhibits.

Riding in the car with the defendant were Don Boyer and Wayne Hunter. They had left the Sheridan Lanes Bowling Alley located at Twenty-first Street and Sheridan shortly before 11 P.M. They were followed almost immediately by John Frownfelter and Glen Woodrow Cummings, who were also driving a Chevrolet car. The latter boys were pursuing the car driven by the defendant, in what developed was a circuitous route to the point of the collision. The record shows that at first Frownfelter and Cummings lost sight of the defendant's car, then picked it up and gave chase. They made numerous turns and drove at excessive speeds, the one to get away, and the other to catch up. At times they would be close, and at other times a considerable distance apart. Cummings estimated their speeds from 50 to 65 miles per hour.

When defendant Barry went into the Fifteenth Street intersection at .Knoxville, Cummings testified that Barry was driving in excess of fifty miles an hour, and that he did not observe defendant's brake-lights go on. This is corroborated by the circumstances that in a signed statement, acknowledged before a notary public and which on cross-examination Barry said was true. he said:

"I was right on top of the stop sign before I could stop. I was looking in the mirror at the time and when I flashed back it was too late. We had been running through the residential sections and I wasn't sure where we were because I wasn't watching for street numbers. We came up on the stop sign and I couldn't stop."

He further said that the other Chevrolet was approximately half a block behind him, "at the same time I seen the stop sign, right

at the intersection", and the next thing he knew the collision occurred.

In his signed statement Barry said he was going at least 50 miles an hour.

After the collision, measurements disclosed that the defendant's car travelled 153 feet 2 inches after the impact. The evidence further shows the decedent Diana Arlene Slater's body was found on the pavement 81 feet from the point of the collision. The dead body of her associate, Mr. Angel, was 100 feet 5 inches from the point of impact. The Pontiac car in which the decedents were riding travelled 76 feet from the point of collision.

 The defendant admitted he had had two bottles of beer, but whether he did or not is of little or no consequence, since his own statement and the State's other evidence conclusively establish the fact that he was driving in a negligent manner, and at an excessive speed under the conditions, and ran the stop sign. (47 O.S.1951 § 121.6). These admissions and the resulting deaths and the other evidence bring him within the definition of the manslaughter statute, fixing the punishment at not less than four years.

 These were the facts produced by the State and admitted by the defendant's notarized statement, upon which the jury predicated its verdict. The evidence was entirely sufficient to support the verdict and the jury was the sole judge of the weight and credibility of the witnesses. Sadler v. State, 84 Okl.Cr. 97, 179 P.2d 479. Hence no problem of the insufficiency of the evidence is presented. In fact, under this record the defendant is exceedingly fortunate to have escaped with the minimum penalty.

This record conclusively shows that this was a needless killing, caused by a game of "ditch 'em", a sort of American high-school Russian roulette, played with automobiles defined by law as a dangerous instrument, which when operated in reckless disregard at an excessive speed and with complete indifference to the safety of others on the highway, may be far more destructive of human life than the idiocy of Russian roulette. Russian roulette confines such idiotic delight to the lone participant, while "ditch 'em" extends the cold and inescapable arms of death to embrace the innocent and unsuspecting. Those who engage in such hazardous and deadly pastime deserve little leniency, whether or not fatalities result. Automobiles are now so numerous that even the most careful operation of them is sometimes fraught with danger. Society should not countenance their use as loaded dice in a game of chance played with death, especially where the lives of others may be the stakes, and the players derive only a vicarious thrill in the process. The leniency manifested by the jury in this case can only be the result of several factors—the forthrightness and disposition to tell the truth manifested by this defendant; the defendant's prior good work record; its sympathy for this 21-year old young man, the living victim of his own foolhardiness, and because of the fact that he was well represented by counsel.

The defendant's first contention is that the trial court erred in not giving his requested instructions numbered from 1 to 10 inclusive.

We have examined the instructions given by the trial court and it is our opinion that they constitute a substantial statement of the law applicable to the facts herein established by the state and admitted by the defendant's own testimony. As the attorney general states in his brief, the defendant's testimony established no defense but clearly put the finger of guilt upon him. The trial court's instructions in this case follow the law, in that they were based on the charge in the information, the defense and the testimony at the trial, and not upon questions unsupported in the evidence. Whisenhunt v. State, Okl.Cr., 279 P.2d 366, Wing v. State, Okl.Cr., 280 P.2d 740. Counsel for the defendant in their zeal, sought through strained interpretation of the facts to create a defense by way of ten requested instructions which the trial court correctly rejected. They involved such intervening causes as distracting defendant's attention to the

stop sign, poor visibility of the stop sign, and that the other decedent, Mr. Angel, driver of the other car, did not keep a proper lookout for his own safety.

These might have been proper matters for instruction if there had been any evidence to support them on the issues thus sought to be raised. But as was said in Chandler v. State, 79 Okl.Cr. 323, 146 P.2d 598, where the question of proximate cause was sought to be covered by instructions, "there must be evidence of its application".

■ Such is the situation here as to the aforementioned requested instructions. Even the defendant's own testimony establishes the fact that there were no intervening applicable causes in this case. The other decedent, Mr. Angel, driver of the other car, was where he had a right to be, proceeding on a boulevard in a lawful manner. None of these feigned defenses herein could purge the defendant of the unlawful operation of his automobile under the circumstances established by the evidence. Where the defendant has made a statement, and testified so that there can be no doubt as to how the homicide occurred and the trial court has instructed within the law and evidence thus established, it is neither the court's duty nor its right to instruct on speculative theories of counsel, unsupported either by the evidence or the law, and it was not error to refuse to do so.

■ The defendant further contends that the trial court erred in refusing to give his requested instruction on justifiable homicide. The evidence herein by no stretch of the imagination formed the basis for such instruction, and the trial court did not act erroneously in refusing to give it.

What has been said about the request on justifiable homicide applies equally well to the contention as to excusable homicide. It requires a nimble imagination to conceive of the propriety of such an instruction, under the circumstances herein.

Some of the defendant's other requests for instructions are equally ingenious but without merit.

The trial court covered in appropriate instructions all the valid requests made by the defendant, and some of the instructions given were even more favorable than the requests.

■ The defendant contends that the trial court further erred in permitting the state to cross-examine the defendant concerning previous violations of city ordinances as to details leading up to other convictions. It was proper for the county attorney to interrogate the defendant concerning previous violations of state laws, as going to his credibility. Only one such conviction was developed by the state, and upon objection by defendant, further detailed inquiry was denied. Later the defense counsel opened up the matter objected to and thus made it proper for the state to engage in further exploration on re-cross examination.

■ Where defendant takes the witness stand he may be asked on cross examination concerning other convictions for the purpose of affecting his credibility, but it is not permissible for the State to inquire as to the details thereof, and objection to such inquiry should be sustained. However, when the defendant, on re-direct examination seeks to explain the circumstances of the former conviction and to go into the matters which the trial court excluded upon the defendant's objection, the State may, in the discretion of the trial court, be permitted on re-cross examination to go into some of the details of the crime or other excluded matters voluntarily opened by the defendant to explain the transactions, since once the defendant has opened up a matter, he can not arbitrarily close the door and exclude material matters necessary for a proper understanding of the same. Little v. State, 79 Okl.Cr. 285, 293, 154 P.2d 772; Sealy v. State, Okl.Cr., 288 P.2d 422.

Hence, the defendant is in no position to complain, in light of the foregoing. For the further reason they made no objection and saved no exception, this contention is without merit.

■ Complaint is made concerning the closing argument of the county attorney. We can not consider this contention, because of the total lack of a record upon which to predicate such consideration. Improper argument by the county attorney, in his closing argument on the ground it was prejudicial, can not be considered where the record before us is silent as to the contention, and fails to contain the alleged objectionable matter. Lincoln v. State, 86 Okl.Cr. 415, 193 P.2d 618; Trotter v. State, 77 Okl.Cr. 368, 141 P.2d 812.

■ The defendant complains the court erroneously permitted the introduction into evidence of exhibits 6 and 11, being pictures of Mr. Angel's car and showing a shoe which defense counsel says was the shoe of the dead Mr. Angel, driver of the car in which the victim herein, Diana Arlene Slater, was riding. The record contains no reference to the shoe or its identity, hence this is a matter of presumption on the part of counsel. But conceding it was Mr. Angel's shoe, the evidence of defendant's guilt is so overwhelming the matter is harmless since it would constitute error without prejudice. 22 O.S.1951 § 1068; Camp v. State, 95 Okl.Cr. 70, 239 P.2d 1036.

The defendant contends the trial court erred in not permitting the admission into evidence of his motion pictures, which he asserts would have demonstrated his contention that the stop sign was obscured.

■ This is wholly without merit, for three reasons. First, the still photographs introduced by the state clearly demonstrated the visibility of the stop sign; second, the defendant at no time testified the stop sign was obscured (he said he was watching in the rear-view mirror the car following him and did not see the stop sign until it was too late); and third, the movies were made so far away from the stop sign involved it was highly speculative that they pictured the true conditions existing at the time. The record discloses that the moving pictures were taken from a distance of 493 feet, 610 feet and 760 feet from the stop sign. We can not find that

these conditions support the contention of error in the trial judge's ruling. It was most doubtful if these pictures were taken so that they would faithfully represent the conditions. It is fundamental that pictures to be admissible must truly represent conditions at the place sought to be portrayed, and this is a matter within the sound discretion of the trial court. McNutt v. State, Okl.Cr., 288 P.2d 418; Cody v. State, Okl. Cr., 361 P.2d 307; Pate v. State, Okl.Cr., 361 P.2d 1086.

■ The defendant contends denial of his motion for change of venue was error, and prevented him from obtaining a fair trial. The record does not support this contention. Such matter is one resting in the discretion of the trial court, and action thereon will not be disturbed on appeal, unless there is an abuse of discretion. Glasgow v. State, Okl.Cr., 328 P.2d 185; Pate v. State, supra. This record does not support such abuse, since the controverted evidence in support of the motion for change of venue was insufficient to sustain it.

The defendant complains that the state was permitted to cross-examine its own witness, Mr. Cummings, on the ground of surprise.

It appears that Mr. Cummings, a passenger in the defendant's car at the time of the fatal collision, had stated in his sworn statement given to the police that the defendant was going 60 to 65 miles per hour just before the collision. Cummings had testified at the preliminary hearing in conformity to the statement. The record discloses that Cummings testified the statement was the truth. Before the trial he was handed the statement and re-read it, and was asked if it was true, and he said, "Yes, I don't want to mess with the speed." He did not say he could not, but that he did not want to.

■ Certainly under these conditions after having testified that the statement as to speed was true, the witness' refusal to testify to what he had twice said under oath was the truth, came as a surprise. Under these conditions, impeachment was proper,

for a witness who holds the key to the known truth should never be permitted to withhold it for arbitrary or sinister reasons as appears was attempted herein. It is not unreasonable to expect a witness who has twice testified under oath to a state of facts would again under oath testify to the same facts. However, the statement, " * * * I don't want to mess with the speed" is not such as to relieve the situation on the subject of the speed, of the element of surprise. The court in criminal trials seeks the truth, and the quest therefor should not be denied by the arbitrary will, whim, or caprice of the one who possesses the truth of the matter sought in the administration of justice.

 The purely formalistic concept that party producing a witness vouches for him and is bound by his testimony, should not preclude impeachment where fairness requires it, and trial courts should be liberal in permitting such impeachment, resolving all doubt in favor of allowing the testimony. The trial court should have instructed the jury, however, that the testimony given by the witness at the preliminary and in his sworn statement could only be considered for the purpose of impeaching the credibility of the witness, and not as substantial testimony to prove the truth of the statement. In the absence of such a request by defendant, and upon his failure to raise the matter in motion for new trial, the alleged error cannot be raised herein. Pettigrew v. State, Okl.Cr., 346 P.2d 957; Hicks v. State, 93 Okl.Cr. 311, 227 P.2d 685; People v. Spinosa, 115 Cal.App.2d 659, 252 P.2d 409.

The trial court did not commit reversible error in permitting the witness to be impeached, under these conditions.

Finally, the defendant complains that the trial court would not permit a consolidation for trial of the two criminal cases arising out of this fatal accident.

 That, too, was a matter for the determination of the trial court, in light of the rule in the case of Kramer v. State, 97 Okl.Cr. 36, 257 P.2d 521 holding:

"An accused [can not] be placed upon trial for two or more offenses at the same time, unless at his request, and then only in cases where the trial court can see that no prejudice would result to the defendant from joining the cases."

We concur with the trial court's ruling that to have sustained the plea for consolidation could have been prejudicial to defendant's substantial rights.

The judgment and sentence appealed from is affirmed.

NIX, P. J., and BUSSEY, J., concur.