Bobby Lee **WAHLGREEN**, Plaintiff in Error,

v.

The **STATE** of Oklahoma, Defendant in Error.

No. A–15960.

Court of Criminal Appeals of Oklahoma.
June 16, 1971.

Don Anderson, Public Defender, Oklahoma County, for plaintiff in error.

Larry Derryberry, Atty. Gen., Jeff L. Hartmann, Ass't Atty. Gen., for defendant in error.

BUSSEY, Presiding Judge.

Bobby Lee Wahlgreen, hereinafter referred to as defendant, was charged, tried and convicted in the District Court of Oklahoma County of the offense of Murder; his punishment was fixed at life imprisonment and from said judgment and sentence a timely appeal has been perfected to this Court.

Briefly stated, the evidence at the trial adduced that Lawrence Pierce was shot to death at the defendant's bar in Oklahoma City on New Years Eve in 1969. Officer Hall testified that he arrived at the bar at approximately 1:45 a. m., on January 1, 1970, and after being admitted by Jewell Wahlgreen and Charles Walker, observed the body of Lawrence Pierce lying on his back with a bullet wound between his eyes.

Charles Walker, defendant's brother-in-law, testified that he was present at the New Years Party. Pierce became very drunk, and started annoying some of the women present. Walker hit Pierce, knocking him to the floor and dragged him outside of the club. He was in the restroom when he heard a commotion and learned someone had been shot. He testified that he loaned the defendant a .22 caliber pistol to keep at the bar. Some persons had previously attacked defendant at the bar with pool cues and the pistol was for protection.

Billie Jean Walker was in the bar with her husband. Pierce was drinking beer and started bothering the woman. She was sitting at the bar when she heard a shot and saw Pierce on the floor and the defendant on the bandstand with a gun in his hand.

Oscar Lee Lamb testified that he found the pistol, State's Exhibit No. I, in an alley about half a block from the defendant's bar.

Bob Phillips testified that he was in the bar, and heard a shot fired. He observed the defendant on the bandstand with a gun.

Ronnie Fountain testified that Pierce was in a sitting position, waving his hands before the shot. Pierce did not make any attack or assault against the defendant prior to the shot.

Albert Williams testified that he saw Pierce seated at the bar about 11:20. He next saw him lying on the floor, and someone dragged him outside the bar. After a few minutes, he observed Pierce lying down inside the bar about six feet from the door, and the defendant was attempting to revive Pierce. He was slapping him and poured something in his face. The defendant went behind the bar and got a gun.

Pierce was sitting up on the floor, leaning forward. He saw the defendant return to the bandstand, pick the gun up from the floor, and get in a kneeling position, and fired the gun about three feet from Pierce.

Dr. Luke, the State Medical Examiner, performed an autopsy on Pierce. He found the cause of death to be a bullet wound in the brain from a .22 caliber bullet. He also found a broken left collar bone, sustained at relatively the same time as the bullet wound. Blood analysis showed a .38 grams percent of ethyl alcohol, which indicated Pierce was extremely intoxicated.

Leona Mae Cummings testified for the defense that she was the defendant's mother-in-law, and was present at the bar the night in question. Pierce tried to get her to go to a motel with him. She went to the restroom, and did not witness subsequent events.

Fred H. Lightsey testified that he was in the bar that evening and saw Pierce make advances to two women. The defendant asked Pierce to leave. He saw Walker take Pierce out of the bar. He left before the shooting. Everyone in the place was highly intoxicated.

Charles Johnson testified that he was at the bar that night, and about 9:00 p. m., it became a private party. Pierce started bothering the women and after he had words with Billie's mother, he knocked Pierce down. He denied telling the police that the defendant kicked Pierce while he was lying down outside the club.

Jewell Wahlgreen, the defendant's wife, testified that she was at the bar that evening. Her husband had kept a gun at the bar for the past three weeks for protection because he had been badly beaten. Pierce was disturbing the people in the bar. She left the club before the shooting, and as she returned, the defendant was leaving. He turned over the keys and appeared to be in a daze. She called the police and met them at the door.

Defendant testified that he operated the Joker Bar, and that in November, he was attacked by three people, and was severely injured. He borrowed the .22 caliber pistol from his brother-in-law for protection. Pierce was a customer at the bar, and had bothered people after a few beers. When defendant tried to talk to him, he would become belligerent, and threatened to whip him. He decided to close the bar to the public New Years Eve and have a private party. Pierce got into an argument with a customer, and when defendant remonstrated, he again threatened to whip defendant. He later saw Pierce by the bandstand, apparently unconscious, and tried to revive him by slapping and pouring water on his face. Someone helped Pierce out, and later he came back in, approaching defendant. He observed one of the persons that had attacked him earlier behind Pierce, and this prompted him to get the pistol. He asked Pierce to leave, but Pierce kept advancing, shaking his arms in his face. This scared him, and he shot the gun. He did not intend to shoot Pierce, thinking that he would scare him with the gun. After the shooting, he was in a daze; he left and threw the gun in an alley. He denied kicking Pierce while he was lying down outside the bar.

■ The first proposition asserts that the court erred in admitting improper prejudicial hearsay in rebuttal. Charles Johnson, a witness for the defendant, testified on cross-examination that he had not informed the police that he saw the defendant kick Pierce while he was lying on the side. The defendant testified on cross-examination that he did not go outside and kick Pierce. The State called two police officers, in rebuttal, who testified that Johnson told them that the defendant went outside and started kicking Pierce, and that he told the defendant to stop kicking him.

This testimony was introduced solely in rebuttal of Johnson's testimony, and the prosecution so stated. "Mr. Swartz: one person, Charles Johnson, is what the rebuttal goes to" (Tr. 299). The defendant contends that this testimony related to a statement made outside defendant's pres-

ence, and was inadmissible either in chief, or in rebuttal, as hearsay.

The general rule relating to such statements is found in 22A C.J.S. Criminal Law § 752, p. 1117, as follows:

"A statement, however, of a witness, made outside the presence of accused, including a statement made to the prosecuting attorney, or a confession of the crime by a witness, is admissible solely to impeach the witness; and when such statements contradict his testimony they may be proved, not as independent evidence or substantive proof of the fact stated, but only, as discussed in Witnesses § 628, as affecting the credibility of the witness."

This general rule of law has been accepted by this Court in Johnson v. State, 33 Okl.Cr. 56, 242 P. 277. See also Hicks v. State, 93 Okl.Cr. 311, 227 P.2d 685; Pettigrew v. State, Okl.Cr., 346 P.2d 957; and Barry v. State, Okl.Cr., 369 P.2d 652. In Barry v. State, supra, Judge Brett stated:

"The trial court should have instructed the jury, however, that the testimony given by the witness at the preliminary and in his sworn statement could only be considered for the purpose of impeaching the credibility of the witness, and not as substantial testimony to prove the truth of the statement. In the absence of such a request by defendant, and upon his failure to raise the matter in motion for new trial, the alleged error cannot be raised herein."

■ In the instant case the record does not reveal that the defendant requested an instruction limiting the purpose of the introduction of the testimony. Failure to not so instruct is, therefore, not reversible error.

The final proposition contends that the Court erred in not giving an instruction on Manslaughter. This contention is based on the premise that although the defendant testified that he had been drinking, but he was not drunk, that other witnesses testified differently. Charles Walker testified there was "plenty to drink"; "Everybody was drinking (Tr. 47)." Billie Jean Walker testified that the defendant, along with the rest, had been "drinking heavy (Tr. 88)." Fred Lightsey testified that "all of them was highly intoxicated (Tr. 189)." Charles Johnson testified that "they all was pretty well loaded (Tr. 215)." Defendant's wife testified that when she last saw him he "looked like he was in a daze."

The Attorney General answers this proposition that the defendant elected to rely on the theory of defense of excusable or justifiable homicide, and that he should not now be allowed to adopt the middle ground and say he was entitled to a manslaughter instruction. In Harrison v. State, Okl.Cr., 461 P.2d 1007, this Court stated in the second syllabus:

"When a defendant, who has the right of election as to several defenses, takes the stand as a witness and makes such admissions as to render every theory of defense unavailable save two, he will be deemed to have elected those two."

■ We are of the opinion that the failure of the trial court in giving instructions on Manslaughter and limiting the purpose of the rebuttal testimony of impeaching the credibility of the witness, is not in itself reversible error, but when considered together, are sufficient to require modification of the judgment and sentence. We feel that the interest of justice would best be served by modifying the judgment and sentence to reflect a conviction of the offense of Manslaughter in the First Degree, and a sentence imposed of forty-five (45) years imprisonment, and as so modified is affirmed.

NIX and BRETT, JJ., concur.