Jasper O. **RILEY**, Appellant,

v.

**UNITED STATES**, Appellee.

No. 6338.

District of Columbia Court of Appeals.

Argued June 27, 1972.

Decided Dec. 12, 1972.
As Amended Feb. 20, 1973.

Paul L. Friedman, Asst. U. S. Atty., with whom Harold H. Titus, Jr., U. S. Atty., John A. Terry, Peter K. Mair and James F. McMullin, Asst. U. S. Attys., were on the brief, for appellee.

Before GALLAGHER and NEBEKER, Associate Judges, and HOOD, Chief Judge, Retired.

NEBEKER, Associate Judge:

Appellant appeals from a conviction of soliciting for lewd and immoral purposes [1] after being found guilty by the trial court sitting without a jury. After considering appellant's contentions relating to asserted First and Fifth Amendment infirmities in the statute and his defense of entrapment, we affirm.

The facts are that while on duty at about 11:00 p.m. Officer Preston, a plainclothes policeman, was initially confronted by appellant as he was waiting on a corner for a traffic light to change before crossing the street. Appellant approached him from the rear and asked, "What are you doing?", to which the officer replied, "Just walking around." Appellant then said, "I bet your joints are hard and you are all fired up", and, "How about walking up to the amusement park place up the street, Capital Amusement?" The officer then said, "Well, what are we going to do up there?" Appellant replied, "I'll give you a good blow job up there. . . . I was the best suck man in town. . . . Will you follow me? Walk up to the place with me, and follow me in the door." Officer Preston then followed appellant to the amusement place and appellant checked several booths in the rear of the establishment. He then returned to Officer Preston, unzipping his own pants as he did so. Officer Preston thereupon arrested appellant.

Appellant here, as in the trial court, contends (1) that the statute proscribing the charged conduct is unconstitutionally vague

Glenn R. Graves, Washington, D. C., with whom John W. Karr, Washington, D. C., was on the brief, for appellant. Rufus G. King, III, Washington, D. C., also entered an appearance for appellant.

1. D.C.Code 1967, § 22–2701.

and thus violative of the Fifth Amendment; and (2) that the statute is unconstitutional in that it proscribes speech which is protected by the First Amendment. In addition, it is contended, for the first time on appeal, that the officer's availability to be solicited coupled with his communicating gestures and conversation, including concealment of the fact that he was a vice squad officer, amounted to entrapment as a matter of law.

In asserting that D.C.Code 1967, § 22–2701 is unconstitutionally vague, appellant specifically challenges that portion of the statute proscribing solicitations for an "immoral or lewd purpose".[2] He asserts that this phrase is void for vagueness and "affords an almost boundless area for individual assessment of the morality of another's behavior." Ricks v. District of Columbia, 134 U.S.App.D.C. 201, 210, 414 F.2d 1097, 1106 (1968).

The standards for determining the constitutional precision of a penal statute were expressed by the Supreme Court in Lanzetta v. New Jersey, 306 U.S. 451, 59 S.Ct. 618, 83 L.Ed. 888 (1939), wherein the Court said:

> "No one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes. All are entitled to be informed as to what the State commands or forbids. . . ." [*Id.* at 453, 59 S.Ct. at 619; footnote omitted.]

However, the Supreme Court has recognized the validity of statutes being questioned as vague when words of long-standing usage having a well-settled common-law definition have been utilized in the statutory language.

> "[T]he decisions of the court upholding statutes as sufficiently certain rested upon the conclusion that they employed words or phrases having . . . a well-settled common-law meaning, notwithstanding an element of degree in the definition as to which estimates might differ, . . ." [Connally v. General Construction Co., 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926).]

The Supreme Court has also stated that the language of criminal statutes may be measured by looking to the common understanding and practices.

> "This Court, however, has consistently held that lack of precision is not itself offensive to the requirements of due process. '. . . [T]he Constitution does not require impossible standards'; all that is required is that the language 'conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices. . . .'" [Roth v. United States, 354 U.S. 476, 491, 77 S.Ct. 1304, 1312, 1 L. Ed.2d 1498 (1957), quoting United States v. Petrillo, 332 U.S. 1, 7–8, 67 S.Ct. 1538, 91 L.Ed. 1877 (1947).]

*See, also* Ricks v. District of Columbia, *supra.*

Thus, it is appropriate to determine if similarity exists between the common-law and contemporary usage of the words used in § 22–2701. *See also* D.C.Code 1967, § 49–301 (Supp. V, 1972).[3] Historically, "urging, inciting, requesting, or advising another person to commit a crime" was in itself punishable as the crime of solicitation. 1 W. Burdick, Law of Crime § 104 at 115 (1946). However, only the solicita-

---

2. "It shall not be lawful for any person to *invite, entice, persuade, or to address for the purpose of inviting, enticing, or persuading, any person or persons sixteen years of age or over* in the District of Columbia, for the purpose of prostitution, or *any other immoral or lewd purpose,* . . ." D.C.Code 1967, § 22–2701. (Emphasis supplied.)

3. That statute provides:
   "The common law . . . shall remain in force except in so far as the same [is] inconsistent with, or [is] replaced by, some provision of the 1901 Code."

tions of felonies and certain misdemeanors were punishable. As for particular acts involving lewd and immoral purposes or public decency, it has been observed:

"It is a crime to urge, request, or advise another person to commit a felony or any crime which involves . . . (3) an offense against public decency, as is the case of solicitations to commit sodomy or adultery; . . . ." [1 Wharton's Criminal Law and Procedure § 81 at 166–67 (1957) (footnote omitted).]

In light of the nature of the offense of solicitation as found at common law, § 22–2701 must necessarily be construed as limited to solicitations of acts which if accomplished would be punishable as a crime. The clear language of § 22–2701 limits the types of solicited crimes to those of prostitution or for "any other immoral or lewd purpose".

██ "Lewdness" has been defined by the Supreme Court as "that form of immorality which has relation to sexual impurity". Swearingen v. United States, 161 U.S. 446, 451, 16 S.Ct. 562, 563, 40 L.Ed. 765 (1896). At common law it is generally used to indicate gross indecency with respect to the sexual relations. State v. Trombley, 3 Conn.Cir. 28, 206 A.2d 482 (1964). A further insight into the common-law meaning of lewd or immoral is given by the definition of a house of ill fame, also known as a bawdy house. A bawdy house has been defined as a place for the convenience of people of both sexes in resorting to lewdness. It is a place many people may frequent for immoral purposes or a house where one may go for immoral purposes without invitation.

Trent v. Commonwealth, 181 Va. 338, 25 S.E.2d 350 (1943). *See also* United States v. Hymans, 463 F.2d 615 (10th Cir. 1972).

As to the specific acts that might be included in the definition, "[t]he Supreme Judicial Court of Massachusetts has held that where indecent and unnatural acts were committed by men with others of their sex, a statute using the term 'lewdness' included such acts. . . ." State v. Trombley, *supra*, citing Commonwealth v. Porter, 237 Mass. 1, 129 N.E. 298 (1921).

In passing on the question of vagueness for this statute we note from the reported cases that it has been uniformly and exclusively applied to solicitations for sodomy, a violation of D.C.Code 1967, § 22–3502.[4] Although those cases have not construed the statute so as to limit its application to solicitations for sodomy, that application of its terms is relevant to the vagueness challenge. A limiting construction of the statute consistent with past practice will save it from the asserted overbreadth on which appellant raises in a context beyond the precise facts of this case. Gooding v. Wilson, 405 U.S. 518, 521, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972).

██ Because of our past decisions, appellant had notice that solicitations for "lewd and immoral purposes" included at the least his solicitation for sodomy. The clarification provided today by expressly limiting "lewd and immoral" to solicitations for sodomy resolves any remaining vagueness issue for the future.

The constitutional validity of the sodomy statute is beyond the pale of an attack. *Cf.* Velez-Lozano v. Immigration and Nat-

---

4. In all of the reported cases within the District of Columbia dealing with soliciting for lewd and immoral purposes, the acts solicited were acts of perversion which would be proscribed by D.C.Code 1967, § 22–3502. *See* Kelly v. United States, 90 U.S.App.D.C. 125, 194 F.2d 150 (1952); Gaithor v. United States, D.C.App., 251 A.2d 644 (1969); Willis v. United States, D.C.App., 198 A.2d 751 (1964); Berneau v. United States, D.C. App., 188 A.2d 301 (1963); Alexander v. United States, D.C.App., 187 A.2d 901 (1963); Reed v. United States, D.C.Mun. App., 93 A.2d 568 (1953); Bicksler v. United States, D.C.Mun.App., 90 A.2d 233 (1952); King v. United States, D.C.Mun. App., 90 A.2d 229 (1952); United States v. Hallams, D.C.Mun.App., 82 A.2d 127 (1951); Brenke v. United States, D.C. Mun.App., 78 A.2d 677 (1951).

uralization Service, D.C.Cir., 463 F.2d 1305 (No. 71–1125, decided June 7, 1972). The observation made in Rittenour v. District of Columbia, D.C.Mun.App., 163 A.2d 538, 560 (1960), wherein this court said "homosexuality is not a crime", is not to the contrary.[5] Whenever homosexual *acts*, even if consensual, come within the statutory proscriptions of § 22–3502, they are nonetheless violations of the law.

The thrust of appellant's argument seems to be that the statute in years past may have been sufficiently precise to withstand the present attack. But he implies, the historic term "lewd or immoral", as understood by our ancestors, has lost its meaning to the contemporary mind. Be that as it may, we are treating a statute enforced only in relation to sodomy or solicitations therefor, and the enforcement policies under that statute appear to offer no evidence that law enforcement officers have undertaken to extend the reach of the statute beyond the scope of what it has been known to fairly embrace.

■ Thus, by construing the provisions of § 22–2701 in light of the well-settled meaning of its language as measured by its common understanding and practices, the language of § 22–2701 is sufficiently certain to inform the public of the conduct which is proscribed. Baggett v. Bullitt, 377 U.S. 360, 373, 84 S.Ct. 1316, 12 L.Ed. 2d 377 (1964); cf. Shuttlesworth v. Birmingham, 394 U.S. 147, 89 S.Ct. 935, 22 L. Ed.2d 162 (1969). We therefore find no vagueness amounting to a deprivation of due process of law.

■ Appellant also contends that through enforcement of this statute his First Amendment right to freedom of speech has been violated and asserts that his conduct was merely a constitutionally protected exercise of that right. We must therefore determine if the statute as construed proscribes speech which falls within the protected area of the First Amendment. Not all speech is so protected. Roth v. United States, *supra,* 354 U.S. at 483, 77 S.Ct. 1304, 1 L.Ed.2d 1498. The guidelines for making such inquiries were recently enunciated by the Supreme Court in Gooding v. Wilson, *supra.* There the Court said:

> "The constitutional guarantees of freedom of speech forbid . . . punishing the use of words or language not within 'narrowly limited classes of speech.' . . . [T]he statute must be carefully drawn or be authoritatively construed to punish only unprotected speech and not be susceptible of application to protected expression. 'Because First Amendment freedoms need breathing space to survive, government may regulate in the area only with narrow specificity.'" [*Id.* 405 U.S. at 521, 92 S.Ct. at 1106; citing Chaplinsky v. New Hampshire, 315 U.S. 568, 571, 62 S.Ct. 766, 86 L.Ed. 1031 (1942), and NAACP v. Button, 371 U.S. 415, 433, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963).]

In *Gooding* the Supreme Court found a lack of consistent and narrow statutory construction so as to limit the operation of the statute in question only to words which the state had a legitimate interest in curtailing. The test applied was the one earlier announced in Chaplinsky v. New Hampshire, *supra,* wherein the Supreme Court affirmed the constitutional validity of a statute prohibiting certain speech which came within the narrow category of "fighting words". The Court said:

> "We are unable to say that the limited scope of the statute as thus construed

5. In Rittenour v. District of Columbia, D.C. Mun.App., 163 A.2d 558 (1960), the court held that because police entrapment was involved the punishable conduct on the part of the defendant did not amount to more than being a homosexual. The court held that this alone could not be the basis

for criminal punishment. *Compare* Robinson v. California, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962) (where it was held that being a drug addict could not be a crime but criminal acts relating to drugs may still be committed).

contravenes the constitutional right of free expression. It is a statute narrowly drawn and limited to define and punish specific conduct lying within the domain of state power, the use in a public place of words likely to cause a breach of the peace. . . ." [*Id.* 315 U.S. at 573, 62 S.Ct. at 770.]

■ We hold that prohibiting solicitation for the offense of sodomy is within the domain of state power. We know of no authoritative holding which extends First Amendment protection to a solicitation to commit an act lawfully prohibited by statute.[6] Accordingly, § 22–2701 does not offend the First Amendment protection of freedom of expression.

■ The court also rejects the argument, made here for the first time, that entrapment as a matter of law is shown from the officer's covert status, his availability to be solicited, and his communicating gestures and conversation. Appellant admitted that he approached the officer and initiated the conversation. He also agreed with the officer that it was he who first suggested and volunteered to be the active party to the sodomous act. In order to show entrapment it must be shown that the crime was committed as a result of the officer's "creative ability" and not merely by his affording an opportunity to one who was already predisposed to commit the crime. Sherman v. United States, 356 U.S. 369, 372, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958). *Cf.* United States v. Tyson, D.C. Cir., 470 F.2d 381 (decided September 28, 1972), quoting United States v. Barcella, 432 F.2d 570 (1st Cir. 1970). *See also* Wajer v. United States, D.C.App., 222 A.2d 68 (1966). We believe there is sufficient evidence to show a predisposition upon the part of appellant to commit this offense, thereby defeating the defense of entrapment now being raised.

The judgment of the trial court is

Affirmed.

6. *See* Velez-Lozano v. Immigration & Naturalization Service, D.C.Cir., 463 F.2d 1305 (No. 71–1125, decided June 7, 1972).