**DISTRICT OF COLUMBIA, Appellant,**

v.

**Hubert WALTERS et al., Appellees.**

**No. 6972.**

District of Columbia Court of Appeals.

Argued Sept. 18, 1973.

Decided May 9, 1974.

Rehearing En Banc Denied July 3, 1974.

Leo N. Gorman, Asst. Corp. Counsel, Washington, D. C., with whom C. Francis Murphy, Corp. Counsel, and Richard W. Barton, Asst. Corp. Counsel, Washington, D. C., were on the brief, for appellant.

Peter Weisman, Washington, D. C., for appellees. David T. Austern, Washington, D. C., also entered an appearance for appellees.

Before KELLY, FICKLING and KERN, Associate Judges.

KERN, Associate Judge:

Each appellee was charged on a printed form information by a check made solely in the box designating "INDECENT ACT . . . commit a lewd, obscene and indecent act . . . in violation of Section 22–1112(a) of the District of Columbia Code." [1] The Police Department forms

---

1. The statute reads in full:

(a) It shall not be lawful for any person or persons to make any obscene or indecent exposure of his or her person, or to make any lewd, obscene, or indecent sexual proposal, or *to commit any other lewd, obscene, or indecent act in the District of Columbia,* under penalty of not more than $300 fine, or imprisonment of not more than ninety days, or both, for each and every such offense.

(b) Any person or persons who shall commit an offense described in subsection (a), knowing he or she or they are in the presence of a child under the age of sixteen years, shall be punished by imprisonment of not more than one year, or fined in an amount not to exceed $1,000, or both, for each and every such offense. (Emphasis added.)

prepared by the arresting officers and received into evidence by the trial court recite that Hubert Walters and the other eight appellees were arrested inside a commercial establishment in the District of Columbia for engaging in acts of mutual masturbation.

Appellees moved to dismiss the informations on the ground that the part of the statute in question, *viz.*, the third clause of Section 22–1112(a), is unconstitutionally "vague on its face . . . and overbroad." A hearing was held on their motions at which the Director of the Morals Division of the Metropolitan Police Department[2] testified that he had neither received from his superiors nor transmitted to his subordinates any guidelines for the enforcement of the statute in question (Tr. at 7–8) and that he interpreted the statutory prohibition against "any other lewd, obscene, or indecent act" as proscribing the touching of the genital areas or the display of these portions of the body in public. (Tr. at 10.) According to his further testimony, he left to each branch of his Division responsibility "for having their own standard of operation and guidelines" (Tr. at 20) and the interpretation of statutes is "passed down" by officers to new recruits. (Tr. at 34–35.)

The Lieutenant Commander of the Prostitution, Prohibition and Obscenity Branch testified that in his opinion "acts of mutual masturbation" and "a deliberate touching in the pubic places with intent to arouse one sexually" would constitute a violation of the statute (Tr. at 39).[3] He estimated that 98 or 99% of the arrests under the statute were for "homosexual acts between men." (Tr. at 44.) The Commander described the training of a new man assigned

to his command as the study "on his own pretty much" of the statute to be enforced, examining past arrest records to give him "a basis of the experience of the previous officers", and an assignment during a "breaking-in period" with an older or more experienced investigator. He acknowledged (Tr. at 69–70) that his opinion of what constituted a lewd, obscene or indecent act in violation of the particular part of the statute in question was "[b]ased on information that was passed on to me by experienced officers that have been working in this particular area."

The trial court concluded (R. at 75) in a thoughtful and comprehensive opinion that the statutory language forming the basis for the charge against appellees was "troublesome and confusing to law enforcement officials . . . [and] insufficiently precise to apprize the citizenry at large of prohibited conduct." The trial judge rejected (R. at 76) the government's urging that he construe the challenged part of this statute so as to avoid constitutional difficulty on the ground that "statutory rewriting is not for the Court. Rather it is a function exclusively within the domain of the legislative branch."

The trial court in addition to granting appellees' motions to dismiss the informations also noted that when a government employee "is arrested and processed through the identification bureau" for sex, narcotics and firearms misdemeanors and all felonies, the Department's Central Records Division regularly notifies in writing the Civil Service Commission or the D.C. Personnel Office, as the case might be, of the arrest. Accordingly, the court ordered (R. at 79) the police (1) to cease and desist notifying all employers of the

2. This Division is composed of separate branches dealing with narcotics, gambling, liquor, and prostitution and obscenity. (Tr. at 5.)

3. On cross-examination he stated first (Tr. at 53):
[I]ndecent acts would be construed to be acts in public involving touching, fondling, masturbation, mutual masturbation in a public place or in a place that would be open to the public . . . .
and then later stated (Tr. at 59),
[T]here would have to be some type of touching deliberate with the intent to arouse someone sexually.

fact of arrest of an employee for alleged sex offenses until "formal charges" had been filed, (2) to furnish a copy of such notification, when made, to the employee "contemporaneously" with its transmittal to the employer, and (3) to notify the employer of the "ultimate, final disposition of the Court case."

█ We agree that the part of D.C. Code 1973, § 22–1112(a) under which appellees were charged is unconstitutionally vague. The statute betrays the classic defects of vagueness in that it fails to give clear notice of what conduct is forbidden and invests the police with excessive discretion to decide, after the fact, who has violated the law. *See* Papachristou v. City of Jacksonville, 405 U.S. 156, 162, 168, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972); Lanzetta v. New Jersey, 306 U.S. 451, 453, 59 S.Ct. 618, 83 L.Ed. 888 (1939). Opposing segments of the public may well agree as to the lewdness, obscenity or indecency of many acts, to paraphrase the court in Ricks v. District of Columbia, 134 U.S. App.D.C. 201, 210–211, 414 F.2d 1097, 1106–1107 (1968), but they will disagree about many other acts without approaching absurdity. Thus, there is a broad gray area in which the words of the statute will convey substantially different standards to different people. An act that is obscene to one person may be quite innocent to another—and by proscribing "any other lewd, obscene, or indecent act" the statute is so encyclopedic in its reach that the areas of reasonable disagreement are limitless.

The government proposes several remedies to overcome the defects of the statute.

It first cites several state appellate decisions which have construed statutes proscribing "lewd" or "indecent" conduct to save them from a vagueness attack. We view these decisions as inapposite since the words "lewd", "obscene" or "indecent" were paired with other terms (e. g., "indecent exposure") which provided a context in which the words could be given meaning. *See* State v. Minns, 80 N.M. 269, 454 P.2d 355 (1969) (indecent touching of a minor and indecent exposure in the presence of a minor); People v. Payne, 37 Mich.App. 442, 194 N.W.2d 906 (1971) (indecent liberties with a minor); State v. Roberts, 69 Wash.2d 921, 421 P.2d 1014 (1966) (indecent or obscene exposure); Slusser v. State, 155 Tex.Crim.R. 160, 232 S.W.2d 727 (1950) (permit the use of one's sexual parts in a lewd or lascivious manner); Baker v. State, 16 Ariz.App. 463, 494 P.2d 68 (1972) (obscene phone call).[4]

In Riley v. United States, D.C.App., 298 A.2d 228, 230–231 (1972), cert. denied, 414 U.S. 840, 94 S.Ct. 96, 38 L.Ed.2d 77 (1973), we upheld against a vagueness attack a statute proscribing solicitation for lewd and immoral purposes because the common law meaning[5] of soliciting for "lewd and immoral purposes" had become well established as relating to sodomy. In contrast, the phrase under attack here, *viz.*, "any other lewd, obscene, or indecent act", has almost limitless application and could have encompassed the acts done in *all* the cases cited by the government.[6]

We find equally unpersuasive the government's argument that upon the basis of past police department practice we are now

4. Only one case which the government cites upholds a statute which proscribes the commission of a "lewd or indecent act", State v. Cota, 99 Ariz. 233, 408 P.2d 23 (1965), but we find the reasoning in that case unpersuasive.

5. As the cases cited by the government reveal, *see, e. g.*, State v. Trombley, 3 Conn.Cir. 28, 206 A.2d 482 (1964); Chesebrough v. State, 255 So.2d 675 (Fla.1971), the common law gives no precise meaning to the words lewd, obscene, and indecent but uses them as

adjectives of general description. *See generally* 2 F. Wharton, Criminal Law & Procedure §§ 780–84 (1957).

6. The government also argues citing State v. Millard, 18 Vt. 574, 46 Am.Dec. 170 (1846), that the indelicacy of the subject matter excuses the failure to spell out precisely the acts covered. We reject the antiquated notion that the penal code should not clearly define such acts. *See, e. g.*, D.C.Code 1973, § 22–3002.

able to construe the statutory phrase in question to mean the deliberate touching in public of one's own or another's genitals for the purpose of sexual arousal. Given the testimony at the hearing before the trial court, it appears that the police themselves have not had a uniform view of the meaning of the particular statutory language. The Director of the Morals Division testified that he had neither received from his superiors nor transmitted to his subordinates any guidelines for enforcement and that interpretation of the statute is "passed down" by officers to new recruits.

Our own decisions, which have reviewed convictions under Section 22–1112(a), do not provide a clear and consistent interpretation upon which we could rely in adopting a construction upholding the statute's constitutionality. *Compare* Riley v. United States, *supra*. *See* Lord v. District of Columbia, D.C.App., 235 A.2d 322 (1967) (no mention what acts were committed); Reed v. District of Columbia, D.C.App., 226 A.2d 581 (1967) ("touching" a plainclothes police officer in a rest room); Herland v. District of Columbia, D.C.Mun.App., 182 A.2d 362 (1962) ("act of perversion" in a public washroom with another individual of the same sex); Hearn v. District of Columbia, D.C.Mun.App., 178 A.2d 434 (1962) (conviction for indecent exposure upheld but reversed conviction for indecent act under the same facts); Rittenour v. District of Columbia, D.C.Mun.App., 163 A.2d 558 (1960) (reversing conviction) (undercover police officer got into defendant's home on pretense and induced defendant to touch him); and, McGhee v. District of Columbia, D.C.Mun.App., 137

A.2d 721 (1958) (committed "an act" in front of a window of an apartment house).

■ In rejecting the avenues of statutory interpretation proposed by the government to save this statute, we acknowledge the cardinal principle that a court should first ascertain whether a construction of a statute is fairly possible that will avoid the question of its constitutionality even though serious doubt exists as to the statute's validity. Ashwander v. TVA, 297 U.S. 288, 348, 56 S.Ct. 466, 80 L.Ed. 688 (1936) (concurring opinion) and the cases cited therein. However, we view the part of D.C.Code 1973, § 22–1112(a) being challenged as so lacking in coordinates, other than its apparent application to sexual matters, that inadequate guidance has been given us for *our* development of a remedial formula for a saving construction.[7] Pertinent here is the oft-quoted passage from United States v. Reese, 92 U.S. 214, 221, 23 L.Ed. 563 (1876):

> It would certainly be dangerous if the legislature could set a net large enough to catch all possible offenders and leave it to the courts to step inside and say who could be rightfully detained and who should be set at large.

■ Finally, we turn to the government's argument that the statute is not vague as applied to appellees, whatever its implications might be for those engaged in conduct other than that occurring here. This argument must fail because we believe the statute is vague *as applied*.

The Supreme Court has recently rejected a claim similar to that advanced by the Corporation Counsel here in its considera-

---

7. We have examined the legislative history of Section 22–1112(a), which was enacted in its present form in 1953, and find it wholly unilluminating as to what Congress intended to accomplish by enacting the particular language under which appellees were charged. It is clear from the debates and reports that Congress was deeply concerned about what it termed "sex offenses" within the District of Columbia and that it *specifically* intended to broaden the offense of indecent exposure and to create a new offense of making a lewd, obscene or indecent sexual proposal. *See* 99 Cong.Rec. 6207 (1953); H.R.Rep.No.514, 83d Cong., 1st Sess. 4 (1953); H.R.Rep.No. 538, 82d Cong., 2d Sess. 19516 (1951). There is no indication of what objective Congress sought in enacting this final "shotgun" clause as a part of subsection (a) of Section 22–1112.

tion of a vagueness attack on the Massachusetts flag desecration statute. Smith v. Goguen, —— U.S. ——, 94 S.Ct. 1242, 39 L. Ed.2d 605 (1974). That statute made it a crime to treat the flag "contemptuously" and was applied in *Goguen* to one who had sewn a small cloth version of the flag to the seat of his trousers. The Court rejected the notion that "[appellee's] behavior rendered him a hard-core violator as to whom the statute was not vague," *id.* at ——, 94 S.Ct. at 1249, on the ground that such a statute simply has no core from which ascertainable standards for judging what is forbidden can be derived.[8]

We believe the criticism is equally applicable to the "shotgun" clause contained in D.C.Code 1973, § 22–1112(a). Its language makes the statute void for vagueness because it subjects appellees to criminal liability under a standard so indefinite that police, court and jury are free to react to nothing more than what offends them, Smith v. Goguen, *supra* at ——, 94 S.Ct. 1242, and impermissibly delegates to them basic policy matters to be resolved on an *ad hoc,* after-the-fact basis with the attendant dangers of arbitrary and discriminatory application. Grayned v. City of Rockford, 408 U.S. 104, 108–109, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972).[9]

■ We deem applicable to the instant case the Supreme Court's comment in *Goguen* that "perhaps the most meaningful aspect of the vagueness doctrine is not actual notice but the other principal element of the doctrine—the requirement that a legislature establish minimal guidelines to govern law enforcement. It is in this regard that the statutory language under scrutiny has its most notable deficiencies." Smith v. Goguen, *supra* at ——, 94 S.Ct. at 1248.[10]

While finding the concluding clause in this statute vague, we do not believe the government is deprived of statutory weapons with which to prosecute the type of behavior allegedly committed here. On the contrary, the government retains an arsenal of provisions to apply in appropriate situations. *See* D.C.Code 1973, §§ 22–1112(a) (first two clauses);[11] 22–2701 (solicitation); *22–2707* (assignation); *22–3501* (indecent acts with children); *22–3502* (sodomy); 47 U.S.C. § 223 (1974 Supp.) (obscene telephone calls). Compare Jeanette Rankin Brigade v. Chief of Capitol Police, 342 F.Supp. 575, 587 (D.D. C.) (three judge court), aff'd 409 U.S. 972, 93 S.Ct. 311, 34 L.Ed.2d 236 (1972).

■ Our determination that the third clause of D.C.Code 1973, § 22–1112(a) is

---

8. The Court did note that the hard-core offender concept makes some sense with regard to statutes that have been authoritatively construed to apply without question to certain activities. As already noted there has been no authoritative construction of the clause in Section 22–1112(a) under attack and we are unable ourselves to determine (and construe authoritatively) what "other lewd, obscene, or indecent act" Congress intended to proscribe.

9. Our discussion of the police enforcement procedure earlier in this opinion bears out this concern.

10. The constitutional deficiency of a vague statute, in contrast to that of an overbroad one, is that it fails adequately to describe what conduct is prohibited and not necessarily that it prohibits constitutionally protected behavior. Consequently, it follows that

a potentially *overbroad* statute may be upheld *as applied,* as in Harris v. United States, D.C.App., 315 A.2d 569 (1974), without considering whether conduct *not before* the court has been impermissibly burdened. But in a *vague* statute, the faulty description of forbidden behavior usually permeates all situations in which the statute is sought to be applied.

As the Circuit Court said in its opinion in the flag desecration case, "resolution of [Goguen's void for vagueness] challenge to the statute . . . necessarily adjudicates the statute's facial constitutionality." Goguen v. Smith, 471 F.2d 88, 94 (1st Cir. 1972), aff'd —— U.S. ——, 94 S.Ct. 1242, 39 L.Ed. 2d 605 (1974).

11. Indeed the Corporation Counsel recognized (R. at 41) that masturbation in a public place was as susceptible of prosecution as indecent exposure.

unconstitutional renders moot the question of the police department's notification of arrests under that statute.[12] We vacate, however, the order of the trial court insofar as it purports to enjoin notification of arrests for *all other* sex offenses, since there is no person before the court who has sustained (or represents anyone who has sustained) a direct injury as a result of the notification policy. To invoke the judicial power to restrain executive action a party must show that he has suffered or is immediately in danger of suffering a direct injury as the result of that action. Laird v. Tatum, 408 U.S. 1, 13, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972). The existence of a policy of transmitting information about arrests for sex offenses does not, in and of itself, entitle a court to act to affect that policy. Accordingly, we affirm the trial court's order dismissing the informations but vacate the order insofar as it attempted to affect the police notification procedures.[13]

So ordered.

12. We understand that the police department has sent no notifications informing employers of the charges against any of the defendants in this case. (Tr. II at 23–24.)

13. The requirement that a party have "standing" to invoke the judicial power of the United States is designed to enforce the mandate of Article III of the Constitution that federal courts have jurisdiction only in "cases" and "controversies", Laird v. Tatum, supra, 408 U.S. at 14, 92 S.Ct. 2318, 33 L.Ed. 2d 154, although Article III is not the exclusive source of this requirement. *See* Poe v. Ullman, 367 U.S. 497, 81 S.Ct. 1752, 6 L. Ed.2d 989 (1961). In Palmore v. United States, 411 U.S. 389, 93 S.Ct. 1670, 36 L. Ed.2d 342 (1973), the Supreme Court recently affirmed the view that the courts of local jurisdiction of the District of Columbia, established by Congress pursuant to Article I, are not bound by the requirements of Article III.

Our jurisdiction thus extends as far as Congress has granted it. Without, however, examining the limits of this grant, this court has followed the principles of standing, justiciability and mootness to promote sound judicial economy and has recognized that an adversary system can best adjudicate real, not abstract, conflicts. Basiliko v. District of Columbia, D.C.App., 283 A.2d 816, 818 (1971); Atkins v. United States, D.C.App., 283 A.2d 204, 205 (1971); Price v. Wilson, D.C.Mun.App., 32 A.2d 109 (1943). We, therefore, view the trial court's action in this area as an abuse of discretion.