DISTRICT OF COLUMBIA, Appellant,

v.

Alejandro GARCIA, Appellee.

DISTRICT OF COLUMBIA, Appellant,

v.

Vincent Julian HILLIARD, Appellee.

DISTRICT OF COLUMBIA, Appellant,

v.

Michael LEHMANN, Appellee.

Nos. 8623, 8624 and 8625.

District of Columbia Court of Appeals.

Argued Dec. 5, 1974.

Decided April 1, 1975.

David P. Sutton, Asst. Corp. Counsel, Washington, D. C., with whom C. Francis Murphy, Corp. Counsel, Louis P. Robbins, Principal Asst. Corp. Counsel, and Richard W. Barton, Asst. Corp. Counsel, Washington, D. C., were on the brief, for appellant.

Glenn R. Graves, Washington, D. C., for appellees Garcia and Lehmann.

Charles H. Schulze, Washington, D. C., for appellee Hilliard.

Before KELLY and GALLAGHER, Associate Judges, and PAIR, Associate Judge, Retired.

PAIR, Associate Judge, Retired:

In these consolidated cases, appellees (defendants) Garcia, Hilliard and Lehmann were each charged by informations filed in the Criminal Division of Superior Court, with making a "lewd, obscene and indecent sexual proposal in violation of Section 22–1112(a) of the District of Columbia Code".[1] Appellees moved to dismiss the informations claiming that the clause of § 22–1112(a) under which they were charged was unconstitutionally vague and overbroad. Appellees Garcia and Lehmann also claimed there was no corroboration of the sexual proposal, a defense which was not reached below and which we need not consider here because of the court's disposition of the mo-

tions on constitutional grounds. After a pretrial hearing on May 28, 1974, Judge Norman granted the motions and dismissed the informations. This appeal by the District of Columbia followed. *See* D.C.Code 1973, § 23–104(c).

For the purposes of the hearing on the motions to dismiss only, appellees stipulated to the facts as represented by the police reports (Form 163) prepared by Officer Andrews who made the arrests. The substance of these reports, as amplified by Officer Andrews' testimony is as follows:

[No. 8623—Garcia]

At about 10:20 p. m., on April 17, 1974, Officer Andrews, a plainclothes officer assigned to the Prostitution and Perversion Branch of the Metropolitan Police Department's Morals Division, while standing at the corner of 14th and K Streets, N.W., was approached by appellee Garcia who asked the officer to join him in looking at some movies up the street. The officer at first declined the invitation but after some urging by Garcia, followed him to a nearby bookstore which contained coin-operated movie machines. The two men engaged separate machines. Later, after the officer had engaged another machine at Garcia's suggestion, Garcia "tried to climb in behind [the officer] hunching [him]—at [him]," but was told by the officer to stop. Garcia then asked where the officer was staying, and after being told that it was at the Ambassador Hotel, he asked if the two of them could go to the officer's room there. The officer agreed. As the two were entering the lobby of the hotel, the officer asked Garcia "what he wanted to do." Garcia replied that "he wanted to suck [him] up" or "suck him off" and shortly thereafter was arrested.

---

1. D.C.Code 1973, § 22–1112(a) provides:
 It shall not be lawful for any person or persons to make any obscene or indecent exposure of his or her person, or to make any lewd, obscene, or indecent sexual pro-

 posal . . . in the District of Columbia, under penalty of not more than $300 fine, or imprisonment of not more than ninety days, or both, for each and every such offense.

[No. 8624—Hilliard]

While walking north in the 500 block of 9th Street, N.W., at about 12:33 a. m., on April 20, 1974, Officer Andrews noticed a man—appellee Hilliard—sitting alone in a parked car. Hilliard motioned the officer over to his car and, after inquiring if "it was getting cold," invited the officer into the car. The officer accepted and got into the car on the passenger side. Hilliard then asked the officer where he was staying and was told that it was at the Ambassador Hotel. Hilliard suggested they could have "fun" in the officer's room there. When Officer Andrews replied that he did not know what Hilliard wanted, Hilliard said "he would suck [him] but he wouldn't take it up the ass." The officer thereupon arrested Hilliard.

[No. 8625—Lehmann]

On April 18, 1974, at about 9:10 p. m., appellee Lehmann approached plainclothes Officer Andrews as he was walking north in the 400 block of 11th Street, N.W., and asked him how he "was doing" and where he was staying. The officer indicated he was staying at the Harrington Hotel across the street. Lehmann then asked if the two of them could go to the officer's room and when asked why, Lehmann replied that "he wanted to suck and fuck" the officer. Lehmann was then arrested.

The trial court found these cases "utterly indistinguishable" from District of Columbia v. Walters, D.C.App., 319 A.2d 332, appeal dismissed for want of a properly presented federal question, 419 U.S. 1065, 95 S.Ct. 650, 42 L.Ed.2d 661 (1974). In that case this court found unconstitutionally vague the clause of D.C.Code 1973, § 22–

1112(a) which proscribed "any other lewd, obscene, or indecent act." Brought into question in the cases at bar is the constitutionality of another clause of § 22–1112(a), namely, the clause which provides that it shall not be lawful " . . . to make any lewd, obscene, or indecent sexual proposal . . . ." Although the sexual proposal clause of § 22–1112(a) contains the same three adjectives found in the clause struck down in *Walters*, the two clauses are, in our view, clearly distinguishable in terms of constitutional clarity and validity. Consequently, the analysis of the constitutional issues in *Walters*, is not controlling with respect to the constitutionality of the clause of § 22–1112(a) at issue here.

The sexual proposal clause of § 22–1112(a) was successfully attacked below on two grounds, the appellees, contending (1) that the statute is overbroad, proscribing speech which is protected by the First Amendment; and (2) that the statute proscribing the conduct charged is unconstitutionally vague and thus violative of the Fifth Amendment. After considering these constitutional arguments, we reverse.

I

 The void-for-vagueness doctrine as extensively developed by the Supreme Court is a due process doctrine incorporating notions of fair notice or warning.[2] It requires legislatures "to set reasonably clear guidelines for law enforcement officials and triers of fact in order to prevent 'arbitrary and discriminatory enforcement.' "[3] It is clear from the legislative history of § 22–1112(a), which was enacted in its present form in 1953,[4] that Congress was "deeply concerned with what it termed 'sex offenses' within the District of Colum-

---

2. *See* Smith v. Goguen, 415 U.S. 566, 572, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974). *See generally* Grayned v. City of Rockford, 408 U.S. 104, 108–09, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972); Papachristou v. City of Jacksonville, 405 U.S. 156, 162, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972); Lanzetta v. New Jersey, 306 U.S. 451, 453, 59 S.Ct. 618, 83 L.Ed. 888 (1939); Connally v. General Construction

Co., 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322 (1926).

3. Smith v. Goguen, *supra*, 415 U.S. at 573, 94 S.Ct. at 1247.

4. Act of June 29, 1953, ch. 159, § 202(a)(1), 67 Stat. 92.

bia and that it *specifically* intended to broaden the offense of indecent exposure and to create a new offense of making a lewd, obscene or indecent sexual proposal." [5] Congress clearly intended that "[t]hrough diligent application of [§ 22–1112] many [sex] offenders who have previously not been adequately dealt with may now be curbed before their impulses lead them to the terrible and extreme crimes of carnal knowledge, rape and homicide." [6] In contradistinction to the clause of § 22–1112 (a) ("any other lewd, obscene, or indecent act") which this court declared unconstitutionally vague in District of Columbia v. Walters, *supra*, the words "lewd", "obscene" and "indecent" in the clause at issue here are joined with the term "sexual proposal," thereby providing a definite context in which the words can be given meaning.[7]

■■■ A sexual "proposal," in the context of § 22–1112(a), connotes virtually the same conduct or speech-conduct as a sexual solicitation; the term clearly implies a personal importunity addressed to a particular individual to do some sexual act.[8] The sexual acts the proposal or solicitation of which are proscribed by § 22–1112(a) are limited to those which are "lewd, obscene or indecent." Furthermore, given the nature of the common law offense of solicitation,[9] it is appropriate to construe the sexual proposal clause of § 22–1112(a) as limited to solicitations to commit lewd, obscene or indecent sexual acts which if accomplished would be punishable as a

crime.[10] Thus various "sex related" offenses in the D.C.Code must be examined to see which, if any, fit into this narrow category of conduct.

As we noted in District of Columbia v. Walters, *supra*, 319 A.2d at 335 n. 5, "the common law gives no precise meaning to the words lewd, obscene, and indecent but uses them as adjectives of general description." However, the Supreme Court has

. . . consistently held that lack of precision is not itself offensive to the requirements of due process. " . . . [T]he constitution does not require impossible standards"; all that is required is that the language "conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices . . . ." [Roth v. United States, 354 U.S. 476, 491–92, 77 S.Ct. 1304, 1312, 1 L.Ed.2d 1498 (1957), quoting United States v. Petrillo, 332 U.S. 1, 7–8, 67 S.Ct. 1538, 1542, 91 L.Ed. 1877 (1947)].

There is scant historical evidence of the enforcement of the sexual proposal clause of § 22–1112(a): very few appeals from convictions for making such sexual proposals have been reported,[7] and while all of the reported cases involved "public" acts or proposals, in none of them did the opinion describe the sexual act proposed. In the instant cases, one police officer—the arresting officer—testified that he "believed"

---

5. District of Columbia v. Walters, *supra* 319 A.2d at 336 n. 7. *See, e. g.*, H.R.Rep.No.514, 83d Cong., 1st Sess. 4 (1953); H.R.Rep.No. 538, 82d Cong., 1st Sess. 6 (1951). *See also* Rittenour v. District of Columbia, D.C.Mun. App., 163 A.2d 558, 559 & n. 3 (1960).

6. H.R.Rep.No.538, 82d Cong., 1st Sess. 6 (1951) (discussing H.R. 4141, 82d Cong., 1st Sess. which contained language identical to that which was eventually enacted in the 83d Cong.).

7. *Cf.* District of Columbia v. Walters, *supra*, 319 A.2d at 335.

8. *Cf.* Black's Law Dictionary 1564 (4th rev. ed. 1968).

9. *See generally* 21 Am.Jur.2d Criminal Law § 114 (1965).

10. *Cf.* Riley v. United States, D.C.App., 298 A.2d 228, 230–31 (1972), cert. denied, 414 U.S. 840, 94 S.Ct. 96, 38 L.Ed.2d 77 (1973).

11. *See* Haynes v. District of Columbia, D.C. App., 202 A.2d 919 (1964) (indecent exposure and indecent sexual proposal); Goodsaid v. District of Columbia, D.C.App., 187 A.2d 486, cert. denied, 375 U.S. 867, 84 S.Ct. 141, 11 L. Ed.2d 94 (1963) (indecent sexual proposal); Howard v. District of Columbia, D.C.Mun. App., 132 A.2d 150 (1957) (indecent sexual proposal).

he had been trained to interpret the sexual proposal clause of § 22–1112(a) as proscribing public proposals to perform illegal sexual acts, an interpretation which appellant now urges us to adopt. But there is no convincing evidence that the sexual proposal clause of § 22–1112(a) has in practice been so sweepingly applied; nor do we believe the cause reasonably susceptible of such broad application.

 Adultery,[12] fornication,[13] seduction[14] and incest[15] are offenses which derive essentially from a belief in the immorality of heterosexual or natural sexual intercourse out of wedlock or, in the case of incest, between heterosexual couples within prohibited degrees of consanguinity. They are not explicitly directed at sexual conduct which is inherently abhorrent regardless of the sex or relationship of the parties. Sodomy, indecent exposure, and indecent sexual acts with children, on the other hand, are offenses which focus on the na-

ture of the sexual act or overture itself, proscribing sexual conduct on the outer reaches of immorality which is both unnatural and perverted. The sodomy, indecent exposure, and indecent sexual acts with children provisions are beyond the pale of constitutional attack.[16] The sexual acts encompassed by sodomy, set forth with grim clarity in § 22–3502, are characterized therein as "unnatural and perverted sexual practice[s] with a person or animal." The sexual conduct proscribed in § 22–3501—indecent sexual acts with children—includes "lewd and lascivious" acts upon or with the body or member of a child and the enticing of any child "for the purpose either of taking any such immoral, improper, or indecent liberties with such child . . . or of committing any such lewd, or lascivious act upon or with the body . . . part or member . . . of such child." We conclude that of the various forms of sexual conduct prohibited by the District

---

12. "Adultery is an offense against the marriage relation, and belongs to the class of subjects which each state controls in its own way." Southern Surety Co. v. Oklahoma, 241 U.S. 582, 586, 36 S.Ct. 692, 694, 60 L.Ed. 1187 (1916). *See also* State v. Ronek, 176 N.W.2d 153, 41 A.L.R.3d 1329 (Iowa 1970); Annot., 41 A.L.R.3d 1338 (1972).

13. Fornication has been generally treated as a crime against "public morals." The state's interest has been held to be the prevention of the birth of illegitimate children as well as the prevention of unlawful sexual intercourse. *See, e. g.,* State v. Barr, 110 N.J.Super. 365, 265 A.2d 817, 819 (Super.Ct., App.Div.1970), rev'd on other grounds sub nom. State v. Clark, 58 N.J. 72, 275 A.2d 137 (1971). *See generally* Annot., 41 A.L.R.3d 1338 (1972).

14. "The object of the [seduction] statute is to protect the chaste virgin against betrayal from an honest belief in the betrayer's protestations of love and affection, or an existing promise of marriage, or a present unqualified promise of marriage as an inducement for the commission of [sexual intercourse]." Hamilton v. United States, 41 App.D.C. 359, 364 (1914). Seduction is an offense which may be committed against unmarried women only. *See* 79 C.J.S. Seduction § 33 (1952).

15. Incest was not a crime at common law but was punishable as an offense in the ecclesiastical courts of England. In the United States it is a statutory crime, the object being "to prohibit sexual intercourse between those related within the prescribed degrees, and thus to promote domestic peace and social purity." 42 C.J.S. Incest § 1 (1952). The purpose of an incest statute is "to protect society [not only] against the evils of inbreeding but also against the socially and morally undesirable consequences of sexual relations under any circumstances between persons within the prohibited degrees of relationship." State v. Geddes, 101 N.H. 164, 136 A.2d 818, 819 (1957).

16. *See* Riley v. United States, *supra,* 298 A.2d at 231 (sodomy); Moore v. United States, D.C.App., 306 A.2d 278, 281–82 (1973) (indecent sexual acts with children). We can find no reported case in which the constitutionality of the indecent exposure provision has been attacked. The indecent exposure clause of § 22–1112(a) codifies the common law crime of indecent exposure. *See generally* Peyton v. District of Columbia, D.C.Mun.App., 100 A.2d 36 (1953); 50 Am.Jur.2d Lewdness, Indecency, and Obscenity §§ 17–18 (1970); 67 C.J.S. Obscenity § 5 (1950).

of Columbia Code, [17] only sodomy, indecent exposure, and indecent sexual acts with children can reasonably be deemed "lewd, obscene or indecent." The sexual proposal clause of § 22–1112(a) can thus be fairly construed to proscribe only proposals to commit sodomy, indecent exposure or, in the case of sexual proposals addressed to children, to perform some sexual act, and is not so vague as to amount to a deprivation of due process of law.

## II

Appellees also argue that the statutory language at issue here is overbroad in that it impinges upon constitutionally protected speech. Under the "overbreadth doctrine," the sexual proposal clause of § 22–1112(a) can withstand an attack upon its facial constitutionality only if, as authoritatively construed by the courts of this jurisdiction, "it is not suspectible of application to speech, although vulgar or offensive, that is protected by the First and Fourteenth Amendments . . . ." [18] Even though the statute may be neither vague, overbroad or otherwise invalid as applied to the conduct charged against appellees, the appellees are permitted to question its unconstitutional vagueness or overbreadth if it is suspectible of application to the protected expression of others. [19] In these cases, however, it is unnecessary to look beyond the stipulated conduct of appellees since they contend that the very speech for which they were arrested and charged is itself constitutionally protected.

The constitutional guarantees of freedom of speech forbid Congress to proscribe the use of words or language not within "narrowly limited classes of speech . . . . These include the lewd and obscene, and profane, the libelous, and the insulting or 'fighting' words—those which by their utterance inflict injury or tend to incite an immediate breach of the peace." [20] Since obscenity is still considered outside the area of protected speech, it is tempting to evaluate the actual words of the sexual proposals in the instant cases by established obscenity "tests." [21] However, the words used in these sexual proposal cases may or may not be obscene in themselves. [22] What matters is that the sexual acts proposed are lewd, obscene or indecent and lawfully prohibited by statute, not the character of the particular words in which the proposal is framed. It is the concept of solicitation, itself punishable as a crime at common law, [23] which removes proposals to comit sodomy from First Amendment protection. Thus, in Riley v. United States, *supra*, 298 A.2d at 233, we held that D.C.Code 1973, § 22–2701, when construed as prohibiting solication to commit sodomy, did not offend the First Amendment.

It is important to emphasize the precise nature of the speech which the sexual proposal clause of § 22–1112(a) proscribes. The principle is well established

---

17. In the District of Columbia adultery (D.C. Code 1973, § 22–301), indecent exposure (§ 22–1112), incest (§ 22–1901), fornication (§ 22–1002), seduction (§ 22–3001), indecent liberties with children (§ 22–3501), and sodomy (§ 22–3502) are criminal offenses. Rape (§ 22–2801) and solicitation to prostitution (§ 22–2701), while clearly sex related offenses, are by their very nature irrelevant to the present discussion.

18. Gooding v. Wilson, 405 U.S. 518, 520, 92 S.Ct. 1103, 1105, 31 L.Ed.2d 408 (1972).

19. *See id.* at 521, 92 S.Ct. 1103.

20. Chaplinsky v. New Hampshire, 315 U.S. 568, 571–72, 62 S.Ct. 766, 769, 86 L.Ed. 1031 (1942) (footnote omitted).

21. *See* Miller v. California, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973).

22. *See* Kaplan v. California, 413 U.S. 115, 118–19, 93 S.Ct. 2680, 37 L.Ed.2d 492 (1973) (obscenity can "manifest itself in conduct, in the pictorial representation of conduct, or in the written and oral description of conduct").

23. *See* Riley v. United States, *supra*, 298 A. 2d at 230–31.

"that the constitutional guarantees of free speech and free press do not permit a State to forbid or proscribe advocacy of the use of force or of law violation except where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action."[24] However, there is a significant distinction between advocacy and solicitation of law violation in the context of freedom of expression. Advocacy is the act of "pleading for, supporting, or recommending; active espousal"[25] and, as an act of public expression, is not readily disassociated from the arena of ideas and causes, whether political or academic. Solicitation, on the other hand, implies no ideological motivation but rather is the act of enticing or importuning on a personal basis for personal benefit or gain. Thus advocacy of sodomy as socially beneficial and solicitation to commit sodomy present entirely distinguishable threshold questions in terms of the First Amendment freedom of speech. The latter, we hold, is not protected speech.

 Appellee Hilliard also contends that § 22–1112(a) is unconstitutional "as applied to proposals to commit consensual sexual acts in private." Such an argument, however, is untenable in light of past decisions of this court. Section 22–1112(a) does not require an open or public act or proposal in the common-law sense and was not designed or intended to apply to acts committed or proposals made "in privacy in the presence of a single and consenting person."[26] While the sexual proposal to Officer Andrews was made by Hilliard in the apparent privacy of his parked automobile, it seems clear from the facts stipulated in the record that the officer was not a "consenting person."[27] Furthermore, the argument that Hilliard or any of the accused "ultimately may have contemplated a private and consensual act is of no legal significance. Any such hope or expectation by an accused may not in contemplation of law project him into a posture in which he can assert a right of privacy which arguably might arise from such a projected position."[28]

The orders of the trial court are reversed and these cases are remanded with directions to reinstate the informations.

GALLAGHER, A. J., concurs in the result.

24. Brandenburg v. Ohio, 395 U.S. 444, 447, 89 S.Ct. 1827, 1829, 23 L.Ed.2d 430 (1969). *See also* Terminiello v. Chicago, 337 U.S. 1, 4, 69 S.Ct. 894, 93 L.Ed. 1131 (1958).

25. Gitlow v. New York, 268 U.S. 652, 665, 45 S.Ct. 625, 629, 69 L.Ed. 1138 (1925).

26. Rittenour v. District of Columbia, D.C. Mun.App., 163 A.2d 558, 559 (1960). *Cf.* Harris v. United States, D.C.App., 315 A.2d 569 (1974) ; Herland v. District of Columbia, D.C.Mun.App., 182 A.2d 362 (1962).

27. We expressly do not decide here whether the officer's conduct amounted to entrapment.

28. United States v. Carson, D.C.App., 319 A.2d 329, 331 (1974).