Kevin B. PINCKNEY, Appellant,

v.

UNITED STATES, Appellee.

No. 02–CM–634.

District of Columbia Court of Appeals.

Argued June 6, 2003.

Decided Aug. 31, 2006.

Monoranjan Bezboruzh for appellant.

Donnell Turner, Assistant United States Attorney, with whom, Roscoe C. Howard, Jr., United States Attorney at the time the brief was filed, John R. Fisher, Assistant United States Attorney at the time the brief was filed, Barbara J. Valliere, Elana Tyrangiel, and David P. Cora, Assistant United States Attorneys, were on the brief for appellee.

Before RUIZ and REID, Associate Judges, and TERRY, Senior Judge.[*]

RUIZ, Associate Judge:

Following a bench trial, appellant was found guilty of misdemeanor sexual abuse [1] and one count of attempted lewd acts.[2] On appeal, he contends that the evidence was insufficient to convict him of misdemeanor sexual abuse because the government failed to present evidence that he touched the victim's "genitalia, anus, groin, breast, inner thigh, or buttocks," as required by the statute, see D.C.Code § 22–3001(9),– 3006 (2001), and that the evidence also was insufficient to support a conviction of attempted lewd acts. In addition, appellant contends that the trial court committed reversible error when it failed to inquire into whether he had knowingly and voluntarily waived his Fifth Amendment privilege against self-incrimination before he testified. We hold that the misdemeanor sexual abuse statute refers equally to the offensive touching of the enumerated areas of the abuser's body, as well as the victim's body, and that the evidence more than sufficed to prove that appellant solicited sex from and caused a child to touch his penis, thereby committing the offenses, respectively, of attempted lewd acts and misdemeanor sexual abuse. We also conclude that there was no need for a Boyd[3]-type inquiry and affirm the convictions.

## I.

In early summer of 2000, then thirteen-year-old S.P. was staying at her grandmother's house. S.P. testified at trial that one day in June, she received a phone call from a caller who threatened to tell S.P.'s grandmother about Devin, "a boy . . . that [she] had intercourse with." Fearing that the caller would tell her grandmother, S.P. confided in appellant, who is her uncle, about the call. Appellant responded by telling S.P., "Don't worry about it. As long as you know you didn't do it." Later that day, appellant discovered S.P. upstairs with a boy. Appellant told her to come with him so they could talk, and asked S.P. to accompany him on a drive to her Uncle Reggie's house. On the way back to her grandmother's house, while Uncle Reggie was pumping gas, appellant gave S.P. some of the spiked lemonade he was drinking.

At her grandmother's house that evening, while S.P. and appellant had dinner, appellant motioned to her to lower her top. S.P. asked appellant, "What you talking about?," to which appellant responded, "I know you know what I'm talking about." Appellant then motioned with both his hands for S.P. to flip open her top and expose her chest. S.P. refused, and appel-

[*] Judge Terry was an Associate Judge of the court at the time this case was argued. His status changed to Senior Judge on February 1, 2006.

[1] See D.C.Code § 22–4106 (1981) (recodified as D.C.Code § 22–3006 (2001)).

[2] See D.C.Code §§ 22–1112(a) & 22–103 (1981) (recodified as D.C.Code §§ 22–1312(a) & 22–1803 (2001)).

[3] Boyd v. United States, 586 A.2d 670 (D.C. 1991).

lant went upstairs. When he came back downstairs he had a condom in his hand, which he held slightly open for S.P. to see. He then sat next to S.P., and rubbed her leg in a way that S.P. said "didn't feel like a touch your uncle would give you," and asked her to go downstairs with him. When she asked him why, he told her to "be quiet" because her grandmother was in the other room. Appellant then took a piece of paper upon which S.P. had been scribbling and wrote "Let's go downstairs."

S.P. accompanied appellant to the basement, where he asked her for "a hug." When S.P. hugged her uncle, she felt the appellant's genitals "rub[ ] up against [her]," [4] and heard him ask her, both before and after he did that, whether she wanted to "do it." Noting her reticence, appellant asked, "Why, you don't want to do it?," to which S.P. responded: "No, because you're my uncle." Appellant said that he must have had too much to drink that day, and S.P. went back upstairs. A while later, appellant cautioned her that "Whatever goes on that's between you and me."

S.P. testified that she told her cousins about the occurrence the next day. She also told her cheerleading coach, Nakia, and Nakia's sister, Tiara, and another friend, Sydney.[5] She did not immediately tell her mother because she was afraid that, if she did, appellant would tell her mother about Devin.

Appellant testified on his own behalf and generally denied S.P.'s accusations. Several character witnesses testified as to his reputation as an honest, truthful and law-abiding person, but all admitted that they had no personal knowledge of the alleged incident with S.P.[6] During cross-examination, appellant conceded that, prior to the Summer of 2000, he had a good relationship with S.P. and that she had no reason to lie about him.

At the close of the government's case in chief, and again at the close of the evidence, appellant moved for judgment of acquittal, arguing that the government had failed to prove that appellant had touched S.P.'s inner thigh or any of the other enumerated private areas of the body identified in the misdemeanor sexual abuse statute. He also argued that the government had failed to prove lewd acts. The trial court concluded, however, that viewing the evidence in the light most favorable to the government, a trier of fact could find that appellant's conduct violated the statute because it encompasses appellant's touching his genitals with any part of S.P.'s body. Crediting S.P.'s testimony, the trial court found appellant guilty of both charges.

## II.

██ Appellant challenges the sufficiency of the evidence to conclude that he committed the offenses of misdemeanor sexual assault and attempted lewd acts. In reviewing sufficiency claims, we view the evidence and draw all inferences in the light most favorable to the government. *See Speight v. United States,* 671 A.2d 442, 454–55 (D.C.1996). This court defers "to the fact finder's right to weigh the evidence, determine the credibility of the witnesses, and draw inferences from the evidence presented[.]" *Patton v. United*

---

**4.** S.P. testified that she knew it was his penis and that it felt "hard" and "nasty."

**5.** Neither S.P.'s coach nor her friends were called to testify at trial.

**6.** One of the character witnesses presented by the defense said that her opinion of appellant's reputation for those character traits would not be changed if she knew that he had done what S.P. accused him of.

*States,* 633 A.2d 800, 820 (D.C.1993) (citations omitted).

## A. Misdemeanor Sexual Abuse

Appellant asserts that a plain reading of the misdemeanor sexual abuse statute reveals the legislature's intent to "limit such offenses to certain delineated parts of the body," specifically, "the genitalia, anus, groin, breast, inner thigh, or buttocks." *See* D.C.Code § 22–3001(9),–3006 (2001). He argues that since S.P. did not say appellant touched any of these areas of *her* body—specifically her inner thigh—the evidence was insufficient to prove beyond a reasonable doubt that he engaged in misdemeanor sexual abuse. Appellant's argument is premised on an interpretation of the statutory definition of "sexual contact" as limited to touching by the defendant of the identified areas of the body of another person.

■■■ As appellant's challenge to his conviction of misdemeanor sexual abuse turns on the proper interpretation of the statute, we consider the question *de novo.* *See District of Columbia v. Morrissey,* 668 A.2d 792, 796 (D.C.1995). As always, we begin with the plain language of the statute. *See Peoples Drug Stores, Inc. v. District of Columbia,* 470 A.2d 751, 753 (D.C. 1983) (en banc). "The primary and general rule of statutory construction is that the intent of the lawmaker is to be found in the language that he has used." *Varela v. Hi–Lo Powered Stirrups, Inc.,* 424 A.2d 61, 64 (D.C.1980) (en banc) (citation omitted). Moreover, in examining the statutory language, it is axiomatic that "[t]he words of the statute should be construed according to their ordinary sense and with the meaning commonly attributed to them." *Davis v. United States,* 397 A.2d 951, 956 (D.C.1979) (citing *United States v. Thompson,* 347 A.2d 581, 583 (D.C.1975)).

Misdemeanor sexual abuse occurs when a person "engages in a sexual act or sexual contact with another person" with "knowledge or reason to know that the act was committed without that other person's permission[.]" D.C.Code § 22–3006 (2001); *see Harkins v. United States,* 810 A.2d 895, 900 (D.C.2002) (citing *Mungo v. United States,* 772 A.2d 240, 244–45 (D.C.2001) (noting two distinct elements of misdemeanor sexual abuse)). This case deals solely with the definition of "sexual contact," which is defined as:

> *the touching* with any clothed or unclothed body part or any object, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire *of any person.*

D.C.Code § 22–3001(9) (2001) (emphasis added).

■■■ Appellant asserts that the trial court erred in concluding that he engaged in sexual contact because the government failed to present evidence that he touched S.P. on any of the enumerated intimate areas.[7] We think appellant's reading of the statute is unduly narrow in view of the plain meaning of the statutory language. The statute prohibits "the touching" of the listed areas of "any person;"[8] it does not specify who must do the touching, or

---

7. Appellant also argues that the government did not disprove consent. We have held that the statute's reference to the complainant's "permission" is not intended to eliminate "the longstanding rule that a child is legally incapable of consenting to sexual contact with

an adult." *Davis v. United States,* 873 A.2d 1101, 1105 (D.C.2005).

8. We find no support for appellant's argument that the term "any person" was used solely for the purpose of making the statute gender-neutral.

whose body must be touched, provided the sexual act or contact is "with another person." [9] D.C.Code § 22–3001(9),–3006 (2001). While it is true that a person engages in sexual contact by touching, with the requisite intent, any of the statutorily enumerated areas of another person's body, we construe the statute as also sanctioning conduct where a person uses another to touch intimate parts of the person's own body. We decline an interpretation that would exclude such an obvious means of offensive touching, *see Peoples Drug Stores,* 470 A.2d at 754 (noting that "statutes are to be construed in a manner which assumes that [the Council] acted logically and rationally") (citing *Berkley v. United States,* 370 A.2d 1331, 1332 (D.C. 1977)), particularly when we consider the drafters' intent in creating the offense of misdemeanor sexual abuse as part of the Anti Sexual Abuse Act of 1994, *see* D.C.Code § 22–3001 *et seq.,* to "'strengthen' the District's laws against sexual abuse and make them 'more inclusive, flexible and reflective of the broad range of abusive conduct which does in fact occur.'" *Davis v. United States,* 873 A.2d 1101, 1106 n. 9 (D.C.2005) (quoting COUNCIL OF THE DISTRICT OF COLUMBIA, REPORT OF THE COMMITTEE ON THE JUDICIARY, BILL 10–87, THE "ANTI-SEXUAL ABUSE ACT OF 1994," at 1 (1994)). Here, S.P. testified that when appellant hugged her, she could feel his hard penis against her. Therefore, we conclude that the evidence supports the trial court's finding that, by causing the "touching" of his own genitalia with S.P.'s body, appellant engaged in sexual contact as defined by the statute.

We are not persuaded by appellant's argument that, pursuant to D.C.Code § 22–3006, the actor may be charged for his own actions only, not for causing another person to engage in sexual contact. Specifically, he contends that the misdemeanor sexual abuse provision does not include the language used to define first and second degree sexual abuse, where a person is guilty of the offense if that person "engages in or causes another person to engage in or submit to a sexual act," D.C.Code §§ 22–3002,–3003 (2001), or third and fourth degree sexual abuse, where a person is guilty if that person "engages in or causes sexual contact with or by another person," D.C.Code §§ 22–3004,–3005 (2001). Our reading of section 22–3006 as applying to the facts of this case does not require appellant to have caused the victim to engage in or submit to sexual contact: S.P.'s testimony established that appellant engaged in the prohibited sexual contact by his own actions. Moreover, a review of the Anti–Sexual Abuse Act as a whole shows that the language used in sections 22–3002 to–3005— and absent in section 22–3006—is tailored to those offenses given the nature of the acts required by the actor (*e.g.,* a person is guilty of first degree sexual abuse if that person "engages in or causes another person to engage in or submit to a sexual act" by "using force against that other person;" "threatening or placing that other person in reasonable fear that any person will be subjected to death, bodily injury, or kidnaping;" "after rendering that other person unconscious;" or "after administering to that other person by force or threat of force, or without the knowledge or permission of that other person, a drug, intoxicant, or other similar substance that substantially impairs the ability of that other person to appraise or control his or her conduct." D.C.Code § 22–3002 (2001); *see Davis,* 873 A.2d at 1103–04 (reviewing overall statutory scheme of the Anti–Sexu-

9. As the misdemeanor sexual abuse statute requires sexual contact "with another person," there can be no offense unless a person other than the defendant also is involved.

al Abuse Act). In light of the clear statement of legislative intent to include "the broad range of abusive conduct which does in fact occur," we conclude that the broader interpretation of the definition of "sexual contact" to include actions by another compelled by the defendant, is consistent with the legislative purpose.[10] *See id.* at 1106 n. 9.

### B. Lewd Acts

 The District of Columbia proscribes "lewd, indecent, or obscene acts," which include "any lewd, obscene, or indecent sexual proposal[.]" D.C.Code § 22–1312(a) (2001); *see also Harlee v. District of Columbia,* 558 A.2d 351, 352 (D.C.1989); *District of Columbia v. Garcia,* 335 A.2d 217, 219 (D.C.1975). "A sexual 'proposal,' in the context of [§ 22–1312(a)], connotes virtually the same conduct or speech-conduct as a sexual solicitation; the term clearly implies a personal importunity addressed to a particular individual to do some sexual act.... [G]iven the nature of the common law offense of solicitation, it is appropriate to construe the sexual proposal clause of [§ 22–1312(a)] as limited to solicitations to commit lewd, obscene or indecent sexual acts which if accomplished would be punishable as a crime." *Garcia,* 335 A.2d at 221. The evidence of record shows that, upon discovering that his niece was sexually active, appellant asked her several times to have sex with him. That evidence showed that appellant solicited sex from his niece, and it is sufficient to support appellant's conviction of attempted lewd acts. *See United States v. Fleming,* 215 A.2d 839, 841–842 (D.C.1966) (defen-

dant may be found guilty of attempt even though the evidence shows a completed offense).

### C. *Boyd* Inquiry

 Appellant contends that the trial court committed reversible error by failing to conduct a *Boyd* inquiry before he testified on his own behalf. *See Boyd v. United States,* 586 A.2d 670 (D.C.1991). *Boyd* stands for the proposition that a defendant's right to testify on his own behalf in a criminal trial is one that may only be waived by the defendant, *see id.* at 674, and suggests that when a defendant does not testify, the trial court should establish an on-the-record waiver to establish that the defendant knew of his right to testify on his own behalf before choosing not to do so, *see id.* at 678–79, n. 15. It follows, therefore, that where the defendant elects *to* testify on his own behalf, as appellant did here, *Boyd* does not govern. *See Smith v. United States,* 837 A.2d 87, 99 (D.C.2003) (noting that *Boyd* did not address "whether a similar rule obtains for a testifying defendant"). Even if *Boyd's* concern for ensuring a defendant's knowing waiver of a constitutional right were extended to a testifying defendant, the trial court did not plainly err in failing to advise appellant of his Fifth Amendment right not to testify, where appellant was represented by counsel and there was no indication that appellant was unduly compelled to testify. *See id.; Bardoff v. United States,* 628 A.2d 86, 93 n. 12 (D.C.1993) (" 'The Fifth Amendment simply is not implicated when a defendant feels pressured to take the stand in order to rebut

---

10. Appellant also challenges the sufficiency of the evidence on the grounds that S.P. did not provide a time and date of the offenses; that the trial court must have had a reasonable doubt when S.P.'s testimony is weighed against appellant's testimony; and that S.P. embellished her testimony after speaking to

the police. We find no merit in appellant's argument given that S.P.'s testimony, which the court credited, provided sufficient evidence to conclude that appellant committed the offenses of misdemeanor sexual assault and attempted lewd acts.

the evidence cumulated against him.' ") (quoting *United States v. Wright*, 251 U.S.App. D.C. 276, 281, 783 F.2d 1091, 1096 (1986)).

*Affirmed.*